EDWARD F. BRIGHAM *vs.* JAMES J. HERRICK.

Suffolk. November 9, 1898. — May 20, 1899.

Present: FIELD, C. J., HOLMES, MORTON, & LATHROP, JJ.

*Principal and Agent — Contract — Action.*

If A. is employed as superintendent of sewer construction in a city by a person who assigns his interest in the contract under which the work is done to a third person, of whom B. is agent, and B. carries on the work and is paid by the city, but does not disclose his agency to A., who, in ignorance of it, continues to work in the same capacity, and is consulted with by A. in regard to the work and paid money on account by him, A. is entitled to treat B. as a principal, and may maintain an action against him for the balance due for his services.

CONTRACT, upon an account annexed, to recover a balance of $187.50, for services as superintendent of sewer construction in Brockton, from November 12, 1895, to January 4, 1896. Trial in the Superior Court, before *Bond, J.,* who allowed a bill of exceptions, in substance as follows.

The plaintiff testified that he was a contractor ; that in the spring of 1895 he and one F. C. Cates, as copartners, made a contract with the city of Brockton to build a system of sewers ; that two or three weeks after work was started, he assigned his interest in the contract to Cates, and thereafter had no pecuniary interest in the contract itself, but continued to work as superintendent, and was paid for his services by Cates up to September 12, 1895 ; that on or about that date the defendant and Cates came to the work together, and the defendant went with the timekeeper and paid off the men ; that the plaintiff had never seen

the defendant before; that a day or two afterwards the defendant came again to settle certain outstanding claims, and consulted with the plaintiff about the progress of the work; that the defendant was there every week, and consulted with the plaintiff from time to time as to how the work was getting along, and went round with the time-keeper on Saturday nights and paid off the men; that the plaintiff saw the defendant give the time-keeper money to put in envelopes, and go with the time-keeper to deliver the envelopes to the employees; that between September 12 and November 12, 1895, the plaintiff received $50 for his own services from the defendant, personally, and the plaintiff got other sums from the time-keeper; that on November 12 the plaintiff went to the defendant, who was with the time-keeper paying off the men, and asked him if he had any money for him, and the defendant said he had not; that the plaintiff thereupon told him that if he did not get any money he should quit; that the plaintiff then went to the city engineer, one Snow, and with the latter drove to the work; that the buggy in which they were was stopped about fifty or seventy-five feet from where the defendant was; that Snow got out of the buggy, went to the defendant and had a conversation with him which the plaintiff did not hear, and Snow then came back and said, " Brigham, it is all right; you are going to stop; he says he will pay you "; and that that night the plaintiff received from the time-keeper $25.

The defendant objected to the admission of what Snow said to the plaintiff, and the judge said that it did not amount to anything unless he could show authority. The plaintiff said that he proposed to do so. The judge then said, " We will see what use may be made of it, and we will strike it out later if you do not connect it." There was no further action taken in regard to this; and no request was made by the defendant's counsel to strike it out.

The plaintiff testified further that after the above conversation he drove back to the work, and from that time on continued to work until it was finished, on January 4, 1896; that besides the $25 last referred to he received two other payments, at different times, of $25; that from November 12 to January 4, the plaintiff saw the defendant at the work every Saturday, and talked with him about the progress of the work, and the defend-

ant also came to his room once or twice and asked about the progress of the work; and that for the work which he did from November 12 to January 4 a fair compensation was $35 a week.

The plaintiff was asked the following question: "When you went to work after your conversation with Snow, on November 12, 1895, to whom did you give credit in doing that work?"

In reply to a question by the judge as to what his question meant, the plaintiff's attorney stated that he meant to whom did the plaintiff give credit for future payments. The judge admitted the question. The witness answered, "James J. Herrick"; and the defendant excepted.

The plaintiff was then asked, "Did you at that time give credit to or rely upon the credit of Mr. John P. Spaulding?" To this question the defendant objected, but it was admitted. The witness answered, "I did not know the man; no, sir; I did not"; and the defendant excepted.

On cross-examination, the plaintiff testified that the first time he met the defendant in Brockton, he did not tell him that he represented John P. Spaulding, or that he went there as Spaulding's clerk; that the reason the defendant went round to see the creditors was that Cates had made an assignment to the defendant, and the defendant was paying the bills; that he only knew that, from what Cates had told him, he had assigned the work to the defendant; that the plaintiff and the defendant went round to see the creditors of the firm; that the plaintiff did not hear one Mitchell, one of the creditors, ask the defendant under whose authority he was acting, and did not hear him reply that he was acting under Spaulding's authority, or that he was Spaulding's clerk in the business of adjusting these matters; that the plaintiff did not know Spaulding at all, and never saw or heard of him before; that after the defendant came to the work the plaintiff called upon him at the office of Nash, Spaulding, and Company in Boston, after this contract had been made; that he received $50 from the defendant personally, on the second or third day after the defendant first went down to the work; that he telephoned the defendant, at the office in Boston of Nash, Spaulding, and Company, in regard to the terms of a settlement that the plaintiff had made with Mitchell; that the payments made to the plaintiff and shown in the account annexed as

credits, were made by the time-keeper; and that he never had any conversation with the defendant whereby the latter engaged him as superintendent of the work.

During the cross-examination of the plaintiff, the defendant offered in evidence the contract between the city of Brockton and Brigham and Cates, and in objecting to the admission of this the plaintiff's counsel stated that he claimed under a special contract, whereby the plaintiff was employed by the defendant.

On re-direct examination, the plaintiff testified that it was after November when he first knew that Spaulding had anything to do with the work.

F. Herbert Snow, called as a witness by the plaintiff, testified that he was the city engineer of Brockton in 1895, and clerk of the sewerage commission, and had charge on behalf of the city of the construction of the sewer; that he knew by hearsay only of an assignment from the plaintiff to Cates in the spring of 1895; that the firm attempted to assign their contract to the defendant; that such assignment was not recognized by the commission, except that the city paid the money coming due under the contract to the defendant; that he first saw the defendant in connection with the work about the middle of the summer, and quite frequently after that, and talked with him about the work and payments of money; that he had seen the defendant with a bag containing envelopes, and had seen him at the work with the bag and envelopes, but could not state that he saw him hand the envelopes to the laborers; that one day when the plaintiff was at the city hall the plaintiff came to him, and, in consequence of a conversation, the witness went with the plaintiff and found the defendant at the work; that he told the defendant that it would not do to have the plaintiff leave the work, and the plaintiff would surely do so if he did not receive some money, and after stating the case and talking with the defendant the latter promised the witness that he would pay the plaintiff some money, and that he should remain on the work; that in several ways the witness urged upon the defendant the importance of retaining the plaintiff, and insisted, as city engineer in charge of the work and the person upon whom the responsibility of the work rested, that the plaintiff should be retained on the work, and that meant that the plaintiff must have some money that

night, and the defendant promised that he would pay the plaintiff; that this conversation took place at the work; that the plaintiff had driven him as near to where the defendant was as he could, and the witness had got out and walked the rest of the way, but the plaintiff was near the place where the defendant and the witness had the conversation; that after the conversation the witness went direct to the plaintiff, who was within sight of the place where the defendant was; and that the defendant did not say anything to the witness about communicating with the plaintiff. The witness was then asked what he said to the plaintiff when he returned to him after the conversation with the defendant. To this question the defendant objected, but the question was admitted; and the defendant excepted. The witness answered, " I said to Mr. Brigham that Mr. Herrick had promised me he would pay him some money, and that he should remain on the work." The witness further testified that after that conversation the plaintiff continued as superintendent of the work, and that the witness frequently saw the defendant at the work in company with the time-keeper when the employees were being paid.

On cross-examination, the witness testified that, as representing the city, he never recognized the defendant as a contractor; that he always held Brigham and Cates responsible for the completion of the work; that the defendant did not authorize the witness to communicate his promise to the plaintiff, and did not authorize him to hire the plaintiff for him; that, as city engineer, he demanded that the plaintiff be retained on the work, and the defendant promised that he would retain him; that the surety on the contractors' bond admitted that the contractors were unable to complete their contract, and volunteered to carry on the work, and did undertake to complete the work; that the money coming due on the contract was paid to the defendant and receipts taken from him, but the bills were made out in the name of Brigham and Cates; that in the witness's office they recognized Brigham and Cates, but the witness thought the treasurer's office recognized the defendant; and that the witness saw money paid over to the defendant in the city treasurer's office.

On re-direct examination, the witness testified that the reason he went to the defendant when the plaintiff told him he was going

to leave was that the defendant was the only one there was to go to.

The defendant testified that he was, in 1895, a clerk in the employ of Nash, Spaulding, and Company; that he first met the plaintiff at Brockton; that the second time he went to Brockton he went with the plaintiff and Cates to visit certain creditors of the firm, and stated to them, in the presence of the plaintiff, that he was there representing John P. Spaulding; that one day Snow came to him while he was riding round with the paymaster, after he had refused to employ or pay the plaintiff, and said that the plaintiff proposed to leave if he could not get any money; that he did not agree to pay the plaintiff; that he did not authorize Snow to communicate the conversation to the plaintiff; that he never engaged the plaintiff in any capacity to work for him; that in giving the paymaster what money was needed to pay the bills, and in helping the paymaster distribute the money in the envelopes, he was acting as a representative of Spaulding; and that the plaintiff visited him at the office of Nash, Spaulding, and Company in Boston on several occasions, once in regard to the employment of additional men on the work, asked for by Snow, and on one occasion after the work was finished in Brockton for the purpose of borrowing a sum of money, which he asked as a loan and not as a payment on account.

On cross-examination, the witness testified that after a certain day he received the money due under the contract from the city of Brockton, and paid it out for the work that was done, but as agent only; that he never gave any directions to the plaintiff in regard to the way the work should be carried out, or in regard to the number of men to be employed; that he did tell the plaintiff to discharge one man, and the witness identified a letter signed by himself, which was put in evidence, in which the defendant directed the plaintiff to discharge a certain employee; that he supplied Cates with what money was necessary to carry on the work of completing the contract; that his instructions were not to give the firm of Brigham and Cates any money except what was necessary; that the plaintiff did have some money after the time of the conversation with Snow; and that he authorized the paymaster to pay the plaintiff what money he considered necessary to pay his board.

On re-direct examination, the witness testified that he never paid the plaintiff $50 ; and that the plaintiff received $50 " at that time," but not from him.

On re-cross-examination, he testified that he was present when the $50 was paid.

The defendant's counsel then read to the jury an article of the contract between Brigham and Cates and the city of Brockton, providing, in effect, that the contract should not be assigned without permission of the city.

At the close of the evidence, the defendant asked the judge to rule as follows : " 1. On all the evidence in the case the plaintiff is not entitled to recover.   2. If the jury find that, in the completion of the work under the original contract between Brigham and Cates and the city of Brockton, the defendant acted as the agent of John P. Spaulding, the plaintiff cannot recover."

The judge refused so to rule ; and the defendant excepted.

The judge instructed the jury that the evidence was not such as to warrant them in finding that there was an express contract between the parties, but submitted to them, under instructions not excepted to, the question whether or not there was an implied contract.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*J. A. Campbell*, for the defendant, submitted the case on a brief.

*G. D. Burrage*, for the plaintiff.

LATHROP, J.   The defendant contended that he was acting as the agent of one Spaulding, and that therefore he was not liable. There was, however, evidence in the case that the plaintiff did not know that the defendant was an agent until after he had performed the work for which he sues.   In *Welch* v. *Goodwin*, 123 Mass. 71, it was said by this court, " One who acts as the agent of an undisclosed principal may be treated as principal by the party with whom he deals."   See also *Hutchinson* v. *Wheeler*, 3 Allen, 577 ; *Southard* v. *Sturtevant*, 109 Mass. 390 ; *Bartlett* v. *Raymond*, 139 Mass. 275 ; *Wheeler* v. *Reed*, 36 Ill. 81, 90 ; *Royce* v. *Allen*, 28 Vt. 234; *Mauri* v. *Heffernan*, 13 Johns. 58 ; *Allen* v. *Rostain*, 11 S. & R. 362, 375.

Treating, then, the defendant as a principal, we find no difficulty in reaching the conclusion that the jury were warranted in

finding the defendant liable. While there was no direct conversation between the plaintiff and the defendant, there was evidence which would warrant the jury in finding that the defendant agreed that the plaintiff should remain on the work, and that he would pay him. The evidence goes further, and shows that the defendant consulted with the plaintiff in regard to the work, and that the defendant personally paid the plaintiff $50.

It is contended that the conversation about retaining the plaintiff and promising to pay him was had with one Snow, the city engineer of Brockton, and that Snow had no authority to communicate to the plaintiff what the defendant said. While Snow testified that the defendant did not say anything to him about communicating with the plaintiff, we are of opinion, on all the evidence in the case, that the jury might infer that the defendant understood and intended that what he said should be communicated by Snow to the plaintiff, and in effect allowed Snow to be a messenger for that purpose.

It is further contended that, as the contract between the plaintiff and Cates on the one side and the city of Brockton on the other contained an article to the effect that the contract should not be assigned without permission of the city, the plaintiff in superintending the work was doing no more than he was obliged to do by his contract. See *Pool* v. *Boston*, 5 Cush. 219. If the city in this case had, while refusing to give permission to an assignment of the contract, made a new contract with the plaintiff and his partner, which operated as a rescission of the old contract, the new contract would be founded upon a sufficient consideration. *Rollins* v. *Marsh*, 128 Mass. 116. But, whatever might be the rights of the city, if it were the defendant in this case, it seems to us clear that the present defendant is in no position to avail himself of them. The plaintiff at the time of the agreement with the defendant had already assigned his interest to Cates, and Cates had assigned the entire interest under the contract to the defendant or his principal. The defendant carried on the work and was paid by the city; and if the defendant saw fit to employ the plaintiff to superintend the work without disclosing his agency, we see no reason why he should not pay him. See *Allen* v. *Leonard*, 16 Gray, 202.

*Exceptions overruled.*