CHELMSFORD FOUNDRY COMPANY *vs.* JOHN SHEPARD, JR.

Suffolk.    January 21, 1910. — May 19, 1910.

Present: KNOWLTON, C. J., HAMMOND, BRALEY, SHELDON, & RUGG, JJ.

*Practice, Civil,* Auditor's report.    *Evidence,* Relevancy and materiality.    *Contract,* What constitutes.

In considering an auditor's report it is to be presumed, where the contrary does not appear, that the auditor has obeyed the order of the court by which the case was referred or recommitted to him and that he has based his findings only upon the evidence which he was directed to consider.

Where, upon a recommittal of a case to an auditor, the auditor has based a supplemental report partly upon new evidence which he should not have heard under the order of court by which the case was recommitted to him, and the case again is recommitted to him with directions to disregard this evidence and to make a report based only on the evidence which was before him at the original hearing, and he thereupon files a second supplemental report, the question, whether the evidence which the auditor heard and considered improperly and afterwards was instructed to disregard has so affected his mind that he has "lost his judicial poise" and is no longer capable of performing his duty fairly, is one solely within the discretion of the trial judge, whose decision of it is final.

Upon a recommittal of a case to an auditor, the auditor based a supplemental report partly upon new evidence which he should not have heard under the order of court by which the case was recommitted to him, and the case again was recommitted to him with directions to disregard this evidence and to make a report based only on the evidence which was before him at the original hearing, and he thereupon filed a second supplemental report. At the trial of the case, after the original report of the auditor and his second supplemental report properly had been read to the jury, the presiding judge refused a request that the order for the second supplemental report also should be read to the jury. *Held,* that the refusal was correct, because the order of court for the second supplemental report had no bearing on the issues before the jury.

In an action by the proprietor of a foundry against an individual upon a contract for furnishing and setting up the ironwork in a certain building, it appeared that for some years before the making of the contract the defendant had carried

on individually a department store under the name of S. and Company, that about four months before the making of the contract he had caused a corporation to be formed called the S. Company, to which all the business and property of S. and Company were transferred, that, about two weeks before the making of the contract with the plaintiff, the S. Company procured a lease for a term of years of a portion of the premises previously occupied by S. and Company, and determined to tear down the old building and erect a new one on its site, that this was the building for which the plaintiff furnished the ironwork under the contract, that the plaintiff's proposal of the contract was in a letter addressed to the architect of the building and described the articles to be furnished for a building for the defendant individually, that the defendant failed to inform the plaintiff that he had caused his business to be incorporated, and, in negotiations in which the terms of the plaintiff's proposal were modified and as modified were accepted, the plaintiff had no notice or knowledge that the defendant was acting as an agent of the corporation and not for himself personally. An auditor to whom the case was referred found " that so far as the defendant had any intention at all, he intended in making the contract to act as the executive officer of the S. Company and not in his individual capacity." The auditor found that by the defendant's failure to inform the plaintiff about the corporation " the plaintiff was actually misled into the belief that the actual owner of the premises upon which the work was to be done was the defendant . . . and not the S. Company." *Held,* that, whether the defendant intended to deceive the plaintiff or not, he must be bound by the fair inference to be drawn from his conduct, and that, if the plaintiff believed and was justified in believing that the defendant was contracting in his individual capacity and not as an agent, the defendant must be held to have contracted thus; therefore that the question whether the contract was made by the defendant personally was for the jury and that a verdict for the plaintiff was warranted.

In an action upon a contract under which the plaintiff furnished the ironwork for a building, where it appears that the defendant previously had carried on business individually and that shortly before the making of the contract with the plaintiff he had caused a corporation to be formed to which his business and all the property relating to it had been transferred, but that this was unknown to the plaintiff who believed that he was contracting with the defendant individually, and where the defendant contends that he is not liable on the contract individually because in making the contract he was acting only as agent for the corporation, the plaintiff may show that in previous years before the making of the contract he had done work for the defendant personally.

CONTRACT for $4,300 as the balance alleged to be due under a contract, made in June, 1898, for furnishing and setting up the ironwork for a large building of the defendant in Providence, in the State of Rhode Island, in accordance with certain plans prepared by one Pope, the defendant's architect. Writ dated October 19, 1903.

In the Superior Court the case was referred to Burton Payne Gray, Esquire, as auditor. He filed, respectively upon the orders of court stated in the opinion, an original report and afterwards first and second supplemental reports. The rulings and

orders in regard to the several reports of the auditor, which are stated in the opinion, were made by *Wait,* J. To these rulings and orders the defendant alleged exceptions.

Afterwards the case was tried before *Hitchcock,* J. The plaintiff read the auditor's original report, and before proceeding to read the auditor's second supplemental report, the defendant requested that the order of *Wait,* J., in regard to the defendant's motion to commit the case to another auditor, *de novo,* which is stated in the opinion, be read to the jury in connection with the second supplemental report. The judge refused this request, and the defendant excepted.

The plaintiff, after the reading of the reports, called as a witness one Ripley, who testified that he lived in North Chelmsford, was engaged in iron and steel construction, and had been employed by the plaintiff for about twenty years in charge of field work, including the erection of materials in building and the charge of workmen outside of the foundry, and the checking up of materials that arrived. He then was asked whether he had anything to do with the work done for the defendant before 1898. This question was objected to by the defendant as relating to matters which were before the time of the contract in question. It was stated that the evidence was offered to show that the plaintiff had done work for the defendant personally in previous years. The judge ruled that the evidence was admissible, and, subject to the defendant's exception, the plaintiff was allowed to ask the witness whether the plaintiff had done any work for the defendant before 1898. The witness answered in the affirmative, and testified that he had done work for the defendant while in the employ of the plaintiff in 1895 and that he saw the defendant around there each day, but had no talk with him.

The facts in evidence are stated briefly in the opinion.

The defendant asked the judge to make, among others, the following rulings, which are referred to in the opinion:

"1. On all the evidence the verdict must be for the defendant.

"2. On the facts found by the auditor, the verdict must as a matter of law be for the defendant.

"3. The auditor's finding for the plaintiff does not in this case make a *prima facie* case for the plaintiff, for that the

auditor has reported the facts upon which said finding is based, and said facts do not, as a matter of law, warrant the conclusion reached.

" 4. In order to recover in this case, the plaintiff must show by a fair preponderance of the evidence that it both sold and delivered to the defendant the merchandise in question.

" 5. There is no evidence warranting any finding that the plaintiff ever contracted to sell to this defendant any merchandise.

" 6. There is no evidence warranting a finding that the plaintiff delivered any merchandise to this defendant.

" 7. In order to recover in this case, the plaintiff must prove by a fair preponderance of evidence either

" (a) That the defendant intended in his individual capacity to contract for the purchase of the iron in question from the plaintiff, and that actual delivery was made by the plaintiff to the defendant pursuant to said contract; or

" (b) That the defendant is estopped to deny that he intended to contract in his individual capacity for said iron, and that actual delivery thereof was made to him."

The judge refused to make any of the rulings numbered from one to six inclusive, and, as to the questions covered by the seventh ruling requested, instructed the jury in part as follows: " In this case the action is brought against this defendant, the claim being by the plaintiff that it knows no other party, that it knew no other party at the time when the contract was made, and that the agreement was made with this defendant under such circumstances that it has a right to hold this defendant liable therefor. That is the claim which the plaintiff makes. And it is a question of fact for you to say, upon all the evidence in this case, whether such was the fact or not. If the plaintiff knew at the time of making the contract — if any contract was made — that it was making the contract with the Shepard Company to furnish these things for the Shepard Company, then it cannot now come into court and claim against this defendant personally. But if the plaintiff did not know that fact, and if the circumstances are such that the plaintiff would be justified in believing that it was dealing with this defendant personally and knew nothing to the contrary, and there was nothing in the circum-

stances of the case by which you as reasonable men should say that he ought to have known to the contrary, then the plaintiff's claim might be sustained, and it might be found by you that this was a contract made with this defendant personally. That is the first important question of fact which stands at the very opening of this case."

The jury returned a verdict for the plaintiff in the sum of $7,016.17; and the defendant alleged exceptions as to the admissions of evidence and to the judge's rulings and his refusals to rule as requested.

*G. W. Anderson*, (*R. L. Ryder* with him,) for the defendant.

*J. Cavanagh*, for the plaintiff.

HAMMOND, J. This was an action of contract to recover for ironwork furnished and set upon a building. The case is before us upon two separate bills of exceptions filed by the defendant, the first arising out of the action of the judge who heard the motions as to the auditor's report before the trial by jury, and the second arising out of the action of the judge who presided at the trial.

1. As to the first bill of exceptions. After the auditor had made his report the defendant moved that it be recommitted to the auditor "with instructions to hear counsel further and to report further findings of fact necessary for the proper determination of the question of this defendant's liability." In the motion the defendant set forth specifically the various matters upon which findings were not made by the auditor and upon which the defendant thought findings ought to have been made. Upon this motion the judge recommitted the report in order that the auditor should make certain additional findings in certain matters specified in the order of recommittal. By the terms of this order the auditor was allowed at his discretion to hear arguments of counsel, but no additional evidence was to be received by him "unless such evidence is not merely cumulative and is newly disclosed since the close of the hearings." To this order no exception was taken.

At the hearing before the auditor certain additional evidence was heard by him, and when the supplemental report came in the defendant moved that both reports, original and supplemental, be set aside "and that said cause be recommitted to some other

auditor for a hearing *de novo,* or in the alternative, that such other order may be made as to the court . . . may seem meet." The grounds set forth in the motion were in substance that in the hearing the auditor had violated the order of recommittal by receiving evidence and by failing to make findings upon the matters therein specified. The judge after a hearing upon this motion found that the auditor had admitted evidence in violation of the order of recommittal and that such conduct was prejudicial to the defendant; and ordered that the supplemental report be recommitted to the auditor, who was directed to report anew his findings of fact upon the matters set out in the first order for recommittal. The auditor was directed to base this second supplemental report solely upon the evidence upon which his original report was based, and if upon such evidence he was unable to make a finding of fact upon any of the matters thus specified he was to so state. He was also directed not to hear further arguments of counsel. The defendant excepted to this order so far as the judge failed to order the report set aside. A second supplemental report was afterwards made.

It is to be noted that in neither motion to recommit is there any allegation that the auditor admitted incompetent evidence at the hearings upon which the original report was based. The first motion to recommit was based solely upon his failure to make certain findings. And in the second motion the charge of the wrongful admission of evidence is manifestly confined to the hearing under the first order of recommittal under which the first supplemental report was made. The second order of recommittal directing the auditor to make the additional findings upon the evidence received under the original hearing was in substance an order directing him to reject all the evidence admitted at the hearing under the first order of recommittal and to make his findings as though there had been no such hearing. It simply cut out from the proceedings the first supplementary report, and the evidence received at the hearing under the first order, and recommitted the case for decision upon the evidence received at the original hearing. The record fails to show that at that hearing any objection was made to the evidence. It is to be presumed that the auditor has obeyed the order of the court, and hence that the original report and the second supplemental report

are based only upon the evidence received without objection at the original hearing. We have therefore no occasion to consider what would be the proper course to pursue when the findings of the auditor are based upon incompetent evidence seasonably objected to before him. See *Sullivan* v. *Arcand*, 165 Mass. 364; *Collins* v. *Wickwire*, 162 Mass. 143, and cases cited.

It is argued however by the defendant that after hearing the evidence introduced at the hearing upon the first order of recommittal, and after making his first supplemental report, the auditor could not have come to the performance of his duty under the second order of recommittal with an unbiassed mind, and that both supplemental reports show clearly that he had " lost his judicial poise and was laboring heavily to find even a flimsy foundation of facts to support his original finding for the plaintiff." Whether the auditor had " lost his judicial poise " so that he was no longer in a mental condition to perform his duty fairly was a question for the judge of the Superior Court who heard the motions, and we see no error of law in the conclusion which he reached. It not unfrequently happens at a trial of facts, even when the trial is by a jury, that incompetent evidence is received and afterwards stricken out; and, when the legal interpretation of the record is that the evidence is so stricken out and a decision or verdict finally reached, there is no error of law in refusing to allow the conclusion thus arrived at to stand. The question whether under such circumstances the decision or verdict shall stand is solely within the discretion of the trial court. Such is this case. The original report and the second report must therefore both stand. The first bill of exceptions is overruled.

2. As to the second bill of exceptions. For reasons above stated, the original report and the second supplemental report were properly read to the jury, and the request of the defendant that the order for the second recommittal be also read was properly refused. That order had no bearing on the issues before the jury.

In considering the remaining exceptions it will be convenient to take up first those relating to the effect to be given to the auditor's report. We shall consider the original report and the second supplemental report as forming together one report

which, except where hereinafter otherwise specified, will be included under the general term " report." The third ruling requested by the defendant was that " the auditor's finding for the plaintiff does not in this case make a *prima facie* case for the plaintiff, for that the auditor has reported the facts upon which said finding is based, and said facts do not as a matter of law warrant the conclusion reached."

There is no dispute that on June 24, 1898, the contract in question was made, and that by its terms the plaintiff, as one of the contracting parties, agreed to furnish and set up certain iron-work upon a building in Providence, all as called for in plans prepared by the architect Pope. The only question was whether the defendant was the other contracting party. It is strenuously urged by the defendant that the general finding for the plaintiff is not warranted by the findings as to the subsidiary or underlying facts.

It becomes necessary to look into the report. The circumstances attending the making of the contract are quite fully stated by the auditor and may be thus summarized: The defendant for some years previous to June, 1898, had carried on a department store in Providence under the style of Shepard and Company, and for this purpose had used as a lessee certain premises there situate. In February, 1898, he caused his business to be incorporated as " The Shepard Company," of which corporation he became president and secretary and to which all the property of Shepard and Company was transferred. About June 8, 1898, the Shepard Company procured a lease for a term of years beginning August 1, 1898, of a portion of the premises formerly occupied by Shepard and Company. The Shepard Company determined to tear down the old building and to erect on the site a new one. At the request of one Pope, the architect employed by the Shepard Company, the plaintiff submitted in the form of a letter under date of June 18, 1898, and directed to Pope, the following proposal:

" Dear Sir: We shall be pleased to furnish and deliver [here follows a general description of the articles to be furnished], all as per blue prints submitted for building for Mr. Shepard, Esq. of Providence, R. I. for the sum of eighty-six hundred sixty-three dollars and eighty-seven cents ($8,663.87)." Then

follows a more detailed description of the articles, and the proposal is signed "Chelmsford Foundry Co. R. S. Ripley." This proposal came into the hands of the defendant.

At the request of the defendant, Sheldon, the plaintiff's agent, went with Pope to Providence to meet the defendant, and on June 24 Sheldon and the defendant had an interview, Pope also being present. There is no evidence that at the time of this interview the plaintiff, its agents or Sheldon, had any knowledge that the business of John Shepard, Junior, previously carried on under the style of Shepard and Company, had been incorporated or that they or either of them had any knowledge of the Shepard Company; but there was evidence that Sheldon had been acquainted with the defendant.

Negotiations begin, conducted on the one side by Sheldon and on the other side by the defendant. The written proposal of June 18, 1898, which had come into the defendant's hands is produced and is before the defendant. After some discussion Sheldon consents to reduce the price quoted in the estimate and writes upon the written proposal, "Price changed to $8,300. R. R. Sheldon, Prest." Then an oral agreement is made with Mr. Shepard, "whereby the plaintiff company agreed to furnish for the sum of $8,300 the structural and ornamental iron and steel required for the proposed new building and as called for in the plans prepared by Mr. Pope. The structural steel consisted of the beams, girders, columns and plates delivered on the site of the building ready for setting by the general contractor; the ornamental iron and steel consisted of the pilasters, mullions, molding and ornamental filigree for the outside of the building, cast from designs, and all to be fitted and put in place on the building by the plaintiff."

The contract is made. Although Shepard has before him the plaintiff's written proposal of January 18 for materials for building for "Mr. Shepard, Esq.," he says nothing about any change in his business, nor as to the incorporation of the Shepard Company. On the contrary he uses the personal pronoun throughout the interview just as he would use it if contracting for himself. It does not appear from the report that he either by word or deed gave Sheldon to understand that he was acting as agent, even for an unknown principal, but, so far as appears from the

report, his conduct seems to have been that of a man contracting on his own behalf. The auditor has found that Sheldon, in making the contract on behalf of the plaintiff, understood and believed that he was contracting with the defendant and was led so to think through the conduct of the defendant. Upon this his full finding is as follows:

" The defendant failed to inform the plaintiff that he had caused his business to be incorporated; furthermore, the defendant had before him the proposal submitted by the plaintiff and dated June 18, 1898, which spoke of the building as ' the building for Mr. Shepard, Esq., of Providence, R. I.,' and used this proposal as the basis for the agreement finally entered into and permitted the plaintiff's agent to indorse upon it the change in price, and neglected to inform the plaintiff that the building was not his building but the building of The Shepard Company, a corporation. In failing to inform the plaintiff in both these particulars, the plaintiff was actually misled into the belief that the actual owner of the premises upon which the work was to be done was the defendant, John Shepard, Jr., and not the Shepard Company."

As to the intent of the defendant the auditor finds as follows:

" There is no direct evidence as to what the defendant intended when he made the contract for the purchase and erection of the iron work sued for, but from his other acts relating to the structure into which was incorporated the subject matter of this action, I find that so far as the defendant had any intention at all, he intended in making the contract to act as the executive officer of the Shepard Company and not in his individual capacity."

Here then is a case in which the defendant, intending to contract not as an individual but as an officer of a corporation, so far as he has " any intention at all," and having before him a written proposal which upon its face refers to the erection of a building for himself in his individual capacity, and therefore having reason to believe that the plaintiff supposes it is making a contract with him as an individual, makes no effort to explain to the plaintiff's agent the real condition of affairs, but on the contrary so conducts himself both in language and act as to lead

the agent to believe that the contract is with him in his individual capacity and to be justified in that belief.

The defendant, whether actually intending to deceive or not, must be bound by the fair inference to be drawn from his conduct, under such circumstances; and, if he by his conduct misled Sheldon so that the latter as a man of reasonable intelligence believed and was justified in believing that the defendant was contracting in his individual capacity and not as an agent, then he must be held to have thus contracted. *Mason* v. *Massa*, 122 Mass. 477. *Brigham* v. *Herrick*, 173 Mass. 460, and cases cited. The case is clearly distinguished from cases like *Stiff* v. *Ashton*, 155 Mass. 130, cited by the defendant. The validity of the contract when made must be determined by the circumstances then existing. There can be no doubt that the general finding of the auditor that the contract was made with the defendant is amply supported by his findings upon the subsidiary matters reported by him. The evidence upon which the auditor based his findings upon the subsidiary matters is not before us, and it must therefore be assumed that it was sufficient to warrant such findings. The report was properly before the jury as *prima facie* evidence of the facts therein found.

After the contract was made there is no doubt that the plaintiff spoke of the other contracting party as the Shepard Company; and there is evidence from the letter heads of the letters received by the plaintiff and from the letters written by it, which of itself would perhaps have authorized a finding that even if the plaintiff originally had supposed that the other contracting party was the defendant as an individual it subsequently ascertained that he contracted only as the agent of the Shepard Company, and that it finally recognized and dealt with the Shepard Company as the real party. The auditor however has found that the plaintiff in the use of the name " The Shepard Company," in its correspondence, statement of account and consignment of materials, used it as the trade name of the defendant. In the absence of a statement of the evidence that finding of course must stand. Upon a careful review of the report we see nothing inconsistent with the view that the defendant's liability continued as it at first existed, and that he remained personally liable. The second and third requests were properly refused.

Since the report made a *prima facie* case for the plaintiff, no matter what might have been the oral evidence at the trial it follows that the first request was also properly refused.

As to the fourth, fifth and sixth requests, it is enough to say that the contract was sufficiently performed when the materials were furnished and put up upon the building contemplated, even if not owned by the defendant. The seventh so far as it is correct in law was given. Without going over the other requests in detail it is enough to say that we see no error in the manner in which the judge dealt with them.

We have carefully examined the charge and can find no error in law. While it was succinct it was clear, apt, and sufficiently covered the case.

The evidence of Ripley was properly admitted.

*Both bills of exceptions overruled.*