NELLIE C. RANDALL, administratrix, *vs.* PEERLESS MOTOR CAR
COMPANY.

Suffolk.    March 22, 1912. — June 19, 1912.

Present: RUGG, C. J., MORTON, BRALEY, SHELDON, & DeCOURCY, JJ.

*Practice, Civil,* Interlocutory ·order, Exceptions, Auditor's report, Conduct of
trial: requests and rulings, New trial, Mistake of jurors, Verdict, Brief before
full court. *Jury and Jurors. Contract,* Performance and breach, Construction.
*Agency,* Exclusive. *Damages,* In contract: loss of prospective profits. *Evi-
dence,* Opinion: experts, Declarations of deceased persons, Photograph. *Words,*
"Best energies."

After a hearing on a motion in an action of contract asking that a report of an
auditor be recommitted and certain parts of it be stricken out, a paper enti-
tled an "order" was filed by the justice who heard the motion, which, after
detailed comments in four numbered paragraphs as to the parts of the report
referred to in the plaintiff's motion and after statements of rules of law bear-
ing thereon and of what conclusions as to the parts of the report in question
would "seem" to follow from such comments and rules, concluded as follows:
"The report is recommitted to the auditor to consider further the first four
matters mentioned ᐰabove.  The auditor may consider further any other mat-
ters which he thinks ought to be further considered in connection with these
matters or not in connection with them."  In considering exceptions alleged
by the defendant "to the rulings in the first four paragraphs of the . . .
memorandum," *it was doubted* whether the main part of the paper called an
"order" was anything more than a "memorandum," the contents of which would
not be subject to exception.

.At the trial before an auditor of an action for an alleged breach of a contract in
writing which required the plaintiff to do certain things before a certain date,
it appeared that ten days before that date the defendant had refused further
to be bound by the contract.  The auditor refused to admit evidence as to the
ability of the plaintiff to perform what was required of him before the date in
question, but in his report discussed that question.  *Held,* that such discussion in
the report of a question as to which evidence was excluded was improper.

Where, in an action for an alleged breach of a contract in writing which required
the plaintiff to do certain things before a certain date, it appears that before that
date the defendant refused further to be bound by the contract, it is immate-
rial on the issue of the breach of the contract whether the plaintiff would have
been financially able to perform what the contract required of him on the date
designated.

In recommitting an auditor's report in an action of contract, it is proper for the
court, with regard to a request of the moving party that the auditor be given
instructions as to what rule of damages he should follow, to rule that "the

time has not come for the court to lay down the rule of law as to the damages which the plaintiff is entitled to recover, if he is entitled to recover."

An auditor to whom an action of contract is referred is not required in his report to make findings of subsidiary facts or a detailed statement of all the contentions of the parties.

The denial of a motion for the recommittal of an auditor's report, where such denial involves no ruling upon a question of law, is within the absolute discretion of the court.

In an action of contract where an auditor's report has been admitted in evidence without objection, in which the auditor upon questions of fact finds for the plaintiff for substantial damages, it cannot be ruled as a matter of law that the plaintiff is entitled only to nominal damages.

In June of a certain year a manufacturer of automobiles made an agreement in writing with a dealer whom he appointed his "exclusive agent" for a year beginning the following January 1 for a specified territory, the dealer ordering at once from the manufacturer twenty-five touring cars and agreeing to pay a certain part of the purchase price on or before February 1. Afterwards the parties made a collateral and subsidiary agreement by which the manufacturer was to furnish a demonstrating car to the dealer and the dealer before January 1 was to give to the manufacturer specifications and make deposits for three cars other than the twenty-five named in the main contract. The demonstrating car furnished by the manufacturer was not such as was contemplated by the parties. The dealer did not give specifications or make deposits for the three extra cars before January 1. On January 21 the manufacturer refused further to be bound by the main contract. In an action by the dealer upon the main contract, it was held, that failure of the dealer to give the specifications and make the deposit before January 1 as to the three cars not included in the main contract did not justify the manufacturer in repudiating the main contract.

A manufacturer of automobiles made with a dealer, who he knew maintained a salesroom and a repair shop for the sale and repair of bicycles and motorcycles in Boston, a contract in writing appointing him his "exclusive agent for the sale of " his "motor cars" in the New England States for a year from a January 1, the contract leaving it to the dealer to conduct the business in his own way, requiring the dealer to maintain "proper salesrooms and repair and storage rooms for the transaction of the business" contemplated by the contract, to carry in stock at all times "at said store one or more new motor cars" of the manufacturer and "such reasonable supplies as may be necessary for replacing parts of motor cars sold by" the dealer "or repairing such cars." The contract also required the dealer to make an advance payment before February 1 upon the purchase price of twenty-five automobiles of the manufacturer ordered by the dealer contemporaneously with the making of the contract. The only return provided for the dealer was a "commission or discount" on the sale price of motor cars of the manufacturer. The contract also required that the dealer "devote his best energies to the sale of the product of the" manufacturer. Held, that "best energies" meant such efforts as in the exercise of sound judgment would be likely to produce the most profitable results to the manufacturer in view of the nature of the business and the extent of territory over which it was to be conducted. Held, also, that the dealer was not precluded by the contract from making an agreement to act as agent for the sale in the same territory of automobiles of other manufacturers which did not compete with

those described in his contract with the first manufacturer, but that he was precluded from making such an agreement as to a car competing with the first manufacturer's.

In determining whether in selling certain motor cars an agent was breaking a contract with a manufacturer which prohibited his selling cars which competed with those of the manufacturer, competing cars here were defined as those so similar in cost, design, size, power, carrying capacity and other characteristics as fairly to leave ordinary and reasonable customers in such doubt in making a choice between them as to permit the skill of a salesman to become a determining factor.

A repudiation of a contract of agency by a principal is justified if the agent by a contract with a third person has placed himself under legal obligations inconsistent with those assumed under the pre-existing contract, even though at the time of the repudiation no actual injury has been suffered by the principal and he did not know of the existence of the contract with the third person.

By the provisions of a contract between a manufacturer of and a dealer in automobiles the dealer was appointed the "exclusive agent" for the sale of the manufacturer's automobiles in the New England States for a year beginning on a January 1, and was required to devote his "best energies" to the promotion of the sales of such automobiles. Contemporaneously with the making of the contract and as a part thereof the dealer ordered twenty-five automobiles of the manufacturer, and the contract required that before February 1 he should make specified payments on account of, and furnish specifications regarding, such automobiles. On January 21 the manufacturer withdrew from the dealer his authority longer to act as his agent in Boston. *Held*, that such act of the manufacturer was an instant breach of the contract, and that no further performance by the dealer could be required as a condition precedent to his right to maintain an action against the manufacturer.

At the trial of an action against a manufacturer of automobiles for an alleged breach of a contract by which the manufacturer appointed the plaintiff his "exclusive agent" for the sale of his automobiles in the New England States for a year, evidence is admissible tending to show that during the first month of the year at an automobile show in the city of New York which prospective purchasers from New England among others were attending, persons in the employ of the defendant and in charge of his booth at the show solicited residents of New England to purchase automobiles directly from the defendant and not through the plaintiff, stating that the plaintiff no longer was the manufacturer's New England agent; and, if evidence is introduced tending to show the existence of a custom assented to by the plaintiff whereby at such show other agents than the plaintiff were permitted to make sales in his territory and that such sales were credited to the plaintiff, it is sufficiently favorable to the defendant for the trial judge to leave the weight of such evidence to the jury and to charge them that, in the absence of such a custom, such sales and other conduct by the defendant's authorized agents would constitute a violation of the defendant's obligation under the contract.

It is too late at the argument before this court of exceptions to the admission at a trial of certain evidence and to a certain portion of the charge to the jury, to urge as a ground for the sustaining of the exceptions that the subject with which the evidence and the portion of the charge in question dealt was not open under the pleadings, if no such ground was urged at the trial.

An auditor to whom an action of contract has been referred properly may include in his report statements of the conflicting contentions of the parties on the subject of damages in order to show the wide variation in the evidence and to indicate that his findings, which differ from the contentions of both parties, are not the result of complete credence of the evidence of either side.

In an action for a breach of contract loss of prospective profits may be recovered when such loss appears to have been within the contemplation of the parties to the contract as a probable result of a breach, to have been its natural, primary and probable consequence, and to be susceptible of proof by evidence reasonably certain and not resting chiefly on speculation, conjecture or surmise.

In an action for a breach of a contract it is not necessary in order that damages resulting from a loss of prospective profits may be recovered, that they should be capable of calculation with mathematical accuracy.

In an action against a manufacturer of automobiles for a breach of a contract in writing by which the defendant appointed the plaintiff his "exclusive agent" for the sale of his automobiles in the New England States for a year, it appeared that the contract was repudiated by the defendant in the first month of the year, and the plaintiff claimed as an element of his damages loss of prospective profits. Contemporaneously with the making of the contract and as a part of it, the plaintiff ordered twenty-five automobiles of the defendant. The only provision of the contract as to the plaintiff's compensation was that "upon all sales" of the defendant's cars, "parts of [and] supplies therefor made hereunder to the" plaintiff, "a commission or discount" of twenty per cent from the defendant's "list prices, as they may be fixed from time to time, shall be allowed" to the plaintiff. *Held*, that the inference was warranted that loss of profits was likely to follow as a reasonable and probable consequence of a repudiation of the contract by the defendant.

A manufacturer of automobiles, who had made a contract in writing with a dealer appointing the dealer his "exclusive agent" for the sale of his automobiles in the New England States during the year beginning January 1, 1903, repudiated the contract on January 21. In an action by the dealer for the breach of the contract, the dealer claimed as an element of his damages loss of prospective profits. The contract provided as the plaintiff's compensation a certain percentage of the sale price of the defendant's automobiles. The plaintiff was to pay practically all the expenses of the agency. At the trial, there was evidence tending to show that the business of selling automobiles, although it then was new, was not absolutely uncertain, that the plaintiff was intimately acquainted with that branch of the trade, was an expert mechanic and had a large number of subagents working or ready to work in soliciting orders for him in various parts of his territory, and that the defendant's automobile had acquired a reputation as a representative car. It appeared that the defendant during the year 1903 had sold thirty-seven cars, and there was definite evidence as to the number of sales made by the plaintiff of another non-competing car after the defendant repudiated the contract and of sales by other persons of other competing cars, as well as what would have been the expense to the plaintiff of conducting the business of the defendant's agency. *Held*, that a finding was warranted that as a natural and probable consequence of the breach of the contract the plaintiff had lost prospective profits the amount of which was capable of reasonable ascertainment.

A manufacturer of automobiles made a contract in writing appointing a dealer his "exclusive agent" for the sale of his cars in a certain territory for a year. The

contract did not prevent the dealer from also acting as agent for cars not competing with the manufacturer's. The dealer made with a second manufacturer a contract to act as agent for the sale of his cars in the same territory during the same period. The first manufacturer repudiated his contract. At the trial of an action by the dealer for a breach of the first contract, it appeared that the plaintiff continued throughout the year to act as agent for the second car and his profits from that agency were shown. There was evidence tending to show and other evidence tending to disprove that the second car was a car competing in the market with the first. The defendant contended that as matter of law the profits made by the plaintiff from the sale of the second car should be considered in mitigation of damages. *Held,* that the contention could not be sustained, because, if the second car was found to be a car competing with the first in the market, there was no breach of the contract by the defendant; and if it was a non-competing car the plaintiff properly might have sold both cars during the same period and in the same territory.

A manufacturer made with a dealer a contract in writing appointing the dealer his "exclusive agent" for the sale of his product in a certain territory for a year beginning on a January 1. Contemporaneously with the making of the contract and as a part of it the dealer ordered a certain amount of the product and the contract provided that he should make certain advance payments therefor on or before February 1. The manufacturer repudiated the contract on January 21. In an action by the dealer against the manufacturer for breach of the contract, it was *held* that, if on January 21 the dealer was in such financial condition that it would have been impossible for him to make the payments on February 1, the plaintiff could not recover substantial damages.

Where requests for rulings and instructions submitted to the judge by a party to an action on trial at the close of the evidence are voluminous and numerous, it is not a proper method of saving exceptions to the failure or refusal of the judge to grant some of the requests, for the excepting party at the close of the charge to the jury to ask generally that his exceptions be saved to the refusal of the judge to grant such requests as had not been covered by the charge, without first pointing out the requests for rulings which he contended had not been given.

At the trial of an action by a dealer against a manufacturer of automobiles for a breach of a contract appointing the plaintiff the defendant's "exclusive agent" for the sale of his automobiles for a certain period in a specified territory, it appeared that the contract required that the plaintiff make certain payments on a certain day. The defendant repudiated the contract ten days before that day. At the trial of the case before an auditor the defendant contended that at the time when he repudiated the contract it was evident that the plaintiff would be unable to make the payments when they were due, and a first report of the auditor contained comments on that phase of the case. That report was recommitted to the auditor and such comments were stricken out by him. Thereafter that issue dropped out of the case as a distinct subject for controverted evidence although there was some evidence which, liberally construed for the plaintiff, might be taken to mean that the plaintiff was able to procure money to meet the obligation when it became due. At the close of the evidence the defendant submitted requests for rulings and instructions, which were very numerous, voluminous and multifarious, and one of which, numbered fifty-three, was that "the burden is upon the plaintiff in order to recover damages to show that"

the plaintiff "was able and willing" to make the payments on the date specified. The ruling was not given in the charge. After the charge the defendant's counsel, without objection on the part of the judge, excepted generally to the failure or refusal of the judge to give such requests as were not given therein. *Held,* that the defendant's exception to the refusal or failure by the judge to give the fifty-third request must be overruled since under all the circumstances the error was immaterial.

Where an exception to evidence is not taken until after the evidence has been introduced and no motion is made to strike out the evidence, the exception must be overruled although the evidence was inadmissible because of incompetency.

A manufacturer of automobiles repudiated in January a contract with a dealer whereby he had appointed the dealer his "exclusive agent" for the sale of his product in a certain territory for a certain year. At the trial of an action by the dealer against the manufacturer for such breach of the contract, there was definite evidence on the question of damages as to the number of automobiles of several makes sold during the year in question in the territory specified and of many other facts from which a fairly definite inference could have been drawn by the jury as to the number of automobiles the plaintiff would have sold for the defendant during the year of the contract. The defendant offered testimony from several witnesses as to their opinion of the number of automobiles the plaintiff would have sold in that time. The evidence was excluded. *Held,* that the circumstances were such that the exclusion of expert testimony was justified.

An exception to the exclusion of evidence by a trial judge will be overruled if the exclusion was proper for any reason, irrespective of the reason which the trial judge gave for excluding it.

Declarations made in good faith and on the personal knowledge of the declarant before the beginning of an action by him are admissible in evidence under R. L. c. 175, § 66, at a trial of the case after the death of the declarant, although before his death he had testified at a previous trial.

The plaintiff in an action by an automobile dealer against a manufacturer for a breach of a contract by the provisions of which the dealer was appointed the defendant's "exclusive agent" for the sale of his automobiles in a specified territory for a year, died before the case was tried and the administrator of his estate prosecuted the action in his stead. At the trial it appeared that the defendant repudiated the contract during the first month of the year during which the agency was to continue, and an issue was, how many of the defendant's automobiles the plaintiff would have been able to sell during the year. As bearing on that issue the trial judge admitted in evidence a photograph of the dealer which, it was testified, was a "very good picture" of him at the time covered by the contract, and the defendant excepted. *Held,* that the exception must be overruled because, while the discretion of the judge would have been exercised more wisely by the exclusion of the photograph, it could not be said that his admission of it was plainly wrong.

A general exception to the admission of certain evidence at a trial will be overruled if the evidence was admissible upon any issue.

Where, after very extended testimony by a plaintiff at a trial of an action before an auditor where his testimony was taken down by a stenographer, the plaintiff dies and, at a trial of the case before a jury each of the counsel for the respective parties thinks that portions of such testimony which the other desires to read are immaterial but they cannot agree as to what portions shall be omitted, it is proper

for the presiding judge, in the exercise of his judicial power as to the order of proof and for the purpose of shortening the reading of all of the testimony, to permit each counsel in turn to read such of it as he desires without waiving his right to object to any of that read by the other counsel.

Under the rule of law that the conduct, motives or grounds of action of jurors in the jury room are not open to subsequent investigation by examination of the jurors, but that their testimony may be received to show that an error was made in the recording of the result of their deliberations after it was reached, affidavits of all the members of a jury made after their separation, stating that they intended that the answer to a special question submitted to them, which was recorded in the negative, should be in the affirmative, are competent evidence in support of a motion to have the answer to the question set aside; but a sentence added at the end of the foreman's affidavit in which he stated what question he put to the jury during their deliberations and what their answer was, is not competent. In this case no objection was made to the incompetent part of the foreman's affidavit, and, being separable, it was held not to have rendered the entire affidavit inadmissible.

Where a jury, in recording their answer to one of several questions submitted to them by the presiding judge, make a clerical error in that they answered the question in the negative, which was favorable to the defendant, instead of in the affirmative, as they intended to, and their general verdict is in favor of the plaintiff, and the error escapes the attention of the judge and of both of the parties at the time the verdict is recorded, a motion by the plaintiff to have that answer set aside may be allowed without the general verdict being affected.

Where, at the argument of a motion by a plaintiff to set aside a negative answer of the jury to a special question put to them by the judge on the ground, which was the fourth stated in the motion, that, as shown by affidavits of all the jurors, they had intended to answer the question in the affirmative and the answer recorded was a clerical error, the judge orally stated, "*I* shall rule that [the affidavits] are admissible, and if admissible, the finding is set aside. . . . The general verdict stands." The defendant excepted to both such rulings. Subsequently the judge indorsed upon the motion "Motion allowed on the fourth ground, if affidavits are legally admissible. Otherwise motion disallowed." Thereafter the judge changed the indorsement by striking out the words "if affidavits are legally admissible. Otherwise motion disallowed," so as to make the statement accord with the original oral ruling. *Held*, that the indorsement as first made was inoperative as an adjudication on the motion, because it failed to express the unequivocal oral ruling earlier made, and that no error was committed by the judge in correcting the indorsement so that it conformed to the oral ruling.

At a trial special questions were submitted to the jury and were answered by them. After the verdict the plaintiff filed a motion that the answer to one of the questions be set aside because through a clerical error it incorrectly recorded the jury's answer. The defendant filed a bill of exceptions taken at the trial. Pending the allowance of the bill of exceptions there was a hearing on the plaintiff's motion at which the judge orally ruled that the motion be granted. Later the judge changed his ruling and made an indorsement on the motion which was a conditional ruling and not a final adjudication upon the motion, and then, again changing his mind, before the bill of exceptions was allowed he amended the indorsement to accord with his former oral ruling. *Held*, that such proceedings did not cause harm to the defendant.

If a defendant files a bill containing exceptions to rulings made at a trial and on a motion subsequent to the trial, and subsequently files another bill setting forth exceptions to some of the rulings made after the trial which are contained in the first bill, and the first bill is allowed, the second bill, so far as it relates to matters covered by the first, should be disallowed.

Where a party to an action files a bill of exceptions containing two subjects distinguishable without difficulty, of which one improperly is included in the bill and the other properly is included and is truly stated, the bill should be disallowed as to the subject improperly in the bill and allowed as to the other subject.

It is improper to include in a brief filed in this court at the argument of exceptions taken at a trial of an action in the Superior Court reference or comment as to the disappearance of letters which, in accordance with a stipulation of the parties, the trial judge has stated to the jury had "been lost, without fault on the part of any person whatsoever;" and if a brief of one party to the action improperly contains such matter, a motion by the other party made at the argument of the exceptions to have such matter stricken from the brief will be granted.

At the trial of an action of contract by a dealer against a manufacturer it appeared that the defendant and the plaintiff had made a contract in writing by which the plaintiff was appointed the defendant's "exclusive agent" for the sale of his goods throughout a certain territory for a year, and that the contract did not prevent the plaintiff from becoming selling agent for manufacturers of goods which did not compete in the market with goods of the defendant. The plaintiff had made with another manufacturer a contract by which he became selling agent for his goods in the same territory and during the same period, and one of the questions at issue at the trial was whether the goods of the second manufacturer competed in the market with those of the defendant. There was a long trial resulting in a verdict for the plaintiff for $14,000. The judge erred in charging the jury on the subject of the possible effect of the contract with the second manufacturer. In all other respects the trial was without error. In sustaining exceptions of the defendant *it was ordered* that the new trial should be confined to the single issue, whether the goods of the second manufacturer did or did not compete in the market with those of the defendant, judgment to be entered for the defendant if it was found that they did, and judgment to be entered on the previous verdict for the plaintiff, if it was found that they did not.

CONTRACT for alleged breaches of the contract in writing given below. Writ in the Supreme Judicial Court, dated January 30, 1904.

The original plaintiff was Frederick E. Randall. He died while the action was pending and the administratrix of his estate was admitted as plaintiff to prosecute the action.

The contract in question was as follows:

"This memorandum made at Cleveland, Ohio, this 7th day of June, 1902, by and between the Peerless Manufacturing Company*

---

* This contract afterwards was assumed by the defendant, a successor of the Peerless Manufacturing Company.

of Cleveland Ohio, party of the first part, and Frederick E. Randall of Boston, Mass. party of the second part.

"Witnesseth: That whereas the first party is engaged in the business of manufacturing and selling Motor Cars and the second party is desirous of becoming the exclusive agent of the first party for the sale of its Motor Cars in the territory included in the New England States.

"Now, therefore, the first party agrees to and does hereby appoint the second party as its exclusive agent for the sale of said Motor Cars in the aforesaid territory for the period of one year from January 1st, 1903, and agrees that it will furnish to the second party in reasonable quantities such circulars, catalogues and other printed matter as it may publish, and that in its general advertising, wherever practical, it will mention the address of the said agent for the above territory. The said second party shall do all local advertising at his own expense, unless mutually agreed otherwise.

"The second party further agrees to maintain at a suitable location in the City of Boston, Mass, proper salesrooms and repair and storage rooms for the transaction of the business herein contemplated, and carry a stock at all times at said store for exhibition and demonstration, one or more new motor cars manufactured by first party, and to carry in stock in said store at all times such reasonable supplies as may be necessary for replacing parts of Motor Cars sold by second party or repairing such cars.

"The second party further agrees to order from the first party upon the execution of this contract not less than twenty-five of the said Cars, complete specifications to be made before February 1, 1903. First party's letter of June 3 and second party's written order of June 3, 1902, to be part of this contract.

"It is agreed that upon all sales of two cylinder Motor Cars, parts of supplies therefor made hereunder to the second party, a commission or discount twenty percent (20%) from the first party's list prices, as they may be fixed from time to time, shall be allowed to the second party, such prices being net F. O. B. cars at factory at Cleveland, Ohio.

"Payments for all such sales are to be made by second party as follows: Ten percent (10) net price of all orders is to be forwarded to the first party with such orders; twenty percent (20%)

of the net price of shipment when the first party shall notify second party that car or cars shall be shipped in twenty days; ten percent (10%) interest to be paid to second party on all said payments for all time over twenty days after receipt of second party's check; the remainder to be paid in such instance in case where any shipment is ready for delivery.

"Said second party agrees to devote his best energies to the sale of the product of the first party and to secure orders for the same as far in advance of delivery dates as possible, and to canvass through his territory and introduce said product therein; he agrees to refer promptly to the first party all inquiries received from territory other than . . . own, and that he will not, except by special permission in writing from the first party, sell or deliver any of such products in any territory other than his own.

"The second party shall be prepared at all times to receive promptly all Cars and goods ordered by it and the first party may require the receipt and acceptance thereof by the second party of any order within ninety (90) days from the time such order shall be given, unless otherwise mutually agreed.

"It is further agreed between the parties hereto that should the second party fail to secure sales of the product of the first party commensurate with the sales of other Cars within said territory, first party may terminate this contract on thirty days' notice in writing to second party. This contract may be terminated by the second party on thirty days' written notice to the first party.

"The first party shall not be liable for any failure to perform any obligations herein assumed by it which may be caused by fire, strikes or insurrections or other causes beyond its control." Here followed the signatures of the parties.

The defendant's letter of June 3, referred to in the contract, was as follows: "In consideration of an order for 25 (twenty-five) Peerless motor cars to be taken between Feb. 1, 1903 and July 1, 1903 we agree to give you the exclusive agency for the New England states for 1903 at present contract discounts from our list prices as fixed from time to time. Advance payment of 10% to be paid on above order on or before Feb. 1, 1903 unless some of such cars are ordered for delivery before that date, advance on such cars to be paid 30 days before shipping date, terms on the

remaining 90% of price to be as at present. In case we are unable to deliver machines on dates later agreed upon we agree to refund on demand advance payments on such machines."

The letter of Randall of the same date was as follows: "Please enter our order; 25 Peerless Motor Cars to be delivered between Feb. 1, 1903 and July 1, 1903, specifications to be decided on after Jan. 1, 1903."

The case was referred to Henry V. Cunningham, Esquire, as auditor.. He filed a report which, after a summary of the pleadings and a narrative of events leading up to the making of the contract in question and a setting out of the documents containing the contract, continued as follows:

"During the remainder of the year 1902 and until the New York automobile show in January, 1903, Randall went ahead under this agency contract. He advertised the 1903 model car and tried to interest people in it. He negotiated with various people and made appointments to demonstrate, which appointments he was not able to keep because of unfavorable weather. He sent out advance Peerless circulars upon which he was described as the agent of this company. He appointed representatives in Worcester, Springfield, Providence and New Haven.

"On January 17, 1903, the automobile show opened in Madison Square Garden in the city of New York, which Randall attended at the opening and where he remained during the entire show. At this show on January 21 the Peerless Company without right terminated Randall's agency and immediately afterwards leased a store at 178 Columbus Avenue, Boston, and opened there a branch sales room and continued its business on these premises during the year 1903, during which time it sold in the New England territory thirty-nine automobiles.

"On January 17, 1903 Randall made an arrangement with the Stevens-Duryea Company to represent it in New England for the year 1903. The Stevens-Duryea Company manufactured and sold at that time an automobile called a runabout which did not compete with touring cars, the type of automobile manufactured and dealt in by the Peerless Company. During the year 1903 Randall represented the Stevens-Duryea Company in New England and was also the New England agent for the Indian Motor Cycle Company.

"On January 21, 1903 Randall did not have sufficient funds of his own with which he could pay to the Peerless Company on February 1 the deposit required under his agreement, and in November 1902 he stated to Mr. Kittredge, the general manager of the Peerless Company, that he did not wish to borrow money to conduct his business. Neither did Randall show that he was then ready with any of the specifications for the remaining twenty-four cars which he was to furnish to the company before February 1, 1903."

Then followed in the auditor's report a statement of Randall's contentions as to the proper method for the estimation of his damages based on the fact that the defendant had sold thirty-seven cars in the territory covered by the contract during the year 1903, and then these paragraphs:

"The automobile business at this time was comparatively new and the Peerless Company's Motor Car but recently placed upon the market.

"The case of *Garfield* vs. *The Peerless Motor Car Company* [189 Mass. 395,] was relied upon by Randall as setting forth the rule of damages to be followed in this case. This case may be distinguished from the Garfield case owing to the fact that Randall's agency was terminated and this action is for a breach by a termination of the contract without right."

Then followed the contentions of the defendant as to the basis for the estimation of damages, and the following paragraphs:

"If Randall has brought his suit at the time the breach occurred the damages might well be said to be conjectural and speculative.

"These thirty-seven cars, however, were sold during the contract period and in this territory.

"The claims by Randall as to estimated profits on repairs, parts, oil, gasolene, tires and sundries are so conjectural and speculative that I find and rule that Randall is not entitled to recover therefor. If upon the foregoing facts he is entitled to recover commission upon all the cars sold in New England during the year 1903, he will be entitled to recover $20,720 less the deductions to which he testified, viz: $5,492, and what he would have been obliged to pay sub-agents in the other parts of New England. . . .

"If the company had not terminated Randall's agency contract when it did and had allowed it to continue until February 1, 1903,

there was nothing in the evidence to show me that he would have made complete specifications for the remaining twenty-four cars before February 1, 1903, and that he would have been able to make payment of ten per cent of the cost of these twenty-four cars on that date."

There then followed in the report a detailed statement of what damages should be awarded "if the rule claimed by Randall is correct," that amount being $14,108; and the statement, "If, however, as claimed by the Peerless Company the damages are speculative and conjectural . . . the plaintiff shall recover only nominal damages."

The last material paragraph of the report was as follows: "The phase of the case that to me seems most important, namely that within a few days of February 1, 1903 when Randall would have been obliged under the contract to furnish specifications for twenty-four cars to be manufactured by the Peerless Company and to pay $6,720 when he had not sold any and did not show that he had the means or resources to make this payment, has not been discussed by counsel or authorities submitted as to liability under these circumstances. I am reluctant therefore to go with counsel for Randall to the extent of damages claimed by him and, taking into consideration that Randall would probably have failed on February 1, 1903 to meet the above requirements, that the Peerless Company acted to protect itself rather than to injure Randall and in carrying on its business incurred large expenses, I find and report that Randall is entitled to recover, $4,000."

Both parties moved that the report be recommitted to the auditor.

The plaintiff's motion was supported by an affidavit from which it appeared that the auditor had excluded evidence offered by both parties relating to the financial standing of Randall and his ability to make the payments to the defendant on February 1, 1903, which the contract called for. The plaintiff's motion in substance asked that the auditor be instructed to "find specially one way or the other the facts set out" in requests for special findings filed with him by the plaintiff; that those paragraphs of the report, above quoted, which dealt with the question whether Randall would be able to make the payments and file the specification called for by the contract on February 1, 1903, be stricken out; and that

the auditor be instructed to adopt different rules of law for the computation of damages than those which he had adopted.

The defendant's motion for recommittal of the report asked that so much of the report as set out Randall's contentions as to the proper basis for the computation of his damages should be stricken from the report; that the auditor be instructed to find specifically as to certain facts in issue, and either to find that Randall was entitled to nominal damages only or to report fully "the facts found by him as the basis for his finding of damages of $4,000 in favor of Randall."

The motions were heard by *Loring,* J., and thereafter a paper, entitled an "order" on the plaintiff's motion to recommit the report, was filed, which, in a paragraph numbered 1, stated that the findings of the auditor that "on January 21 the Peerless Company without right terminated Randall's agency," and that "During the remainder of the year 1902 and until the New York automobile show in January 1903 Randall went ahead under this agency contract," with what followed in the report "must be taken to be a finding that up to January 21, 1903, Randall had performed all things which he was called upon by the contract to perform up to that date." The paragraph continued: "On the day on which his agency was terminated without right, Randall had by the terms of the contract ten days in which to complete specifications for the remaining twenty-four cars and to make payment of ten per cent of the cost of the cars;" and stated, as to the paragraph in the report, above quoted, which contained the statement, "On January 21, 1903, Randall did not have sufficient funds of his own with which he could pay to the Peerless Company on February 1 the deposit required under his agreement. . . . Neither did Randall show that he was then ready with any of the specifications for the remaining twenty-four cars which he was to furnish to the company before February 1, 1903," that such "would seem to be a finding on an issue which ceased to be an issue in this case when the auditor found that the agency was terminated without right on January 21, 1903."

As to the finding in the report, "If the company had not terminated Randall's agency contract when it did and had allowed it to continue until February 1, 1903 there was nothing in the evidence to show me that he would have made complete specifications for

the remaining twenty-four cars before February 1, 1903 and that he would have been able to make payment of ten per cent of the cost of these twenty-four cars on that date," the "order" stated in a paragraph numbered 2: "No reason is stated in the report why the ordinary rule does not apply, to wit, that a total repudiation of a contract by the defendant excuses the plaintiff from thereafter performing what but for that repudiation he would have been bound thereafter to perform to entitle him to hold the defendant under the contract. This finding seems to be a finding on an issue which under the finding made by the master never became an issue in the case."

As to the finding in the last paragraph quoted from the report on page 364, *supra,* the "order" in a paragraph numbered 3 called attention to the fact that evidence on the question, whether Randall would be able on February 1, 1903, to pay the money and furnish the specification called for by the contract, was excluded, and states, "It does not seem to be proper to insert in an auditor's report a finding that there 'was nothing in the evidence' upon an issue of fact named when the auditor has excluded evidence on that point, and then to find that that issue is 'the phase of the case that to me [the auditor] seems most important.'"

As to the last sentence in the paragraph of the report just referred to, the "order" in a paragraph numbered 4 stated: "The defendant had no right to terminate the plaintiff's agency on January 21, 1903, because it was probable that Randall would fail to do what he had to do on February 1, 1903. The motive which the Peerless Company had in terminating without right the plaintiff's agency is of no consequence. If that company determined to break its contract with the plaintiff to protect itself, it must pay the damages which were thereby caused the plaintiff; and the damages caused the plaintiff by the termination of his agency without right on January 21, 1903, are the same whatever the defendant's motive was in committing that breach."

As to the requests in the motions of both parties for instructions to the auditor to make findings upon specific issues, the "order" stated: "The auditor is bound to find the facts put in issue by the pleadings which under the findings made by him are material. He is not bound to make specific findings one way or the other on subsidiary facts which bear on the facts put in issue by the plead-

ings. Neither is the auditor bound to make specific findings when his general finding covers the issue raised by the pleadings which under his findings are material."

On the question of damages, the " order " stated: "The time has not come for the court to lay down the rule of law as to the damages which the plaintiff is entitled to recover, if he is entitled to recover. It may be proper, however, to point out that there is this difference between the plaintiff in the case at bar and the plaintiff in *Garfield* v. *Peerless Motor Car Co.* 189 Mass. 395. The plaintiff in the case at bar was not in fact complying with his part of the contract when the cars sold by the defendant were sold by it, and the plaintiff in *Garfield* v. *Peerless Motor Car Co.* was."

The order made was: "The report is re-committed to the auditor to consider further the first four matters mentioned above. The auditor may consider further any other matters which he thinks ought to be further considered in connection with these matters or not in connection with them. The new report is to be filed in thirty days."

The defendant's motion was denied for reasons stated in the above order on the plaintiff's motion.

The defendant alleged exceptions to the allowance of the plaintiff's motion, to the denial of the defendant's motion, "and particularly . . . to the rulings in the first four paragraphs of the . . . memorandum."

The auditor then filed a substitute report, which was the same as the report previously filed except that it omitted the paragraphs commented on in the " order " on the plaintiff's motion to recommit the previous report, and, instead of the last paragraph quoted from the previous report, contained the finding, "I find and report that Randall is entitled to recover, $4,000."

The defendant moved "that the case may be referred back to the auditor, or that the rule to the auditor may be vacated and the substitute report of the auditor struck from the record," stating as grounds for the motion in substance that the auditor had failed to report certain facts, because he had set out Randall's "claims," because he had stated the defendant's "claims" without stating that those "claims were facts," because as matter of law on the facts reported only nominal damages should have been assessed,

and "because generally said report is inadequate, ambiguous, indefinite, and misleading."

The motion was heard by *Sheldon,* J., and was denied; and the defendant alleged an exception.

The case was sent to the Superior Court for trial under St. 1909, c. 33, and was tried in that court before *Morton,* J.

The course of the trial with regard to the photograph of Randall mentioned in the paragraph in the opinion numbered 21, was as follows: In redirect examination one Temple, a witness for the plaintiff, was shown the photograph and testified that it was "a very good picture" of Randall in about 1902 and 1903. The plaintiff's counsel then asked to have it "marked for identification," and, the defendant's counsel objecting, the judge asked, "What is the purpose of it?" and the plaintiff's counsel replied, "When a witness is in court the jury judges as to the truth of his statements not only by what he says but by how he looks. Mr. Randall can't be here, and I offer it in your Honor's discretion to show what kind of a man Mr. Randall was, that's all." Later in the trial the plaintiff's counsel asked one Connell, a witness for the plaintiff, after a series of questions relating to Randall's ability as a salesman, "Can you give any of his personal characteristics, what kind of a looking man he was?" and, the defendant's counsel objecting, the judge stated, "I will exclude that for the present. I passed finally upon the admission of the picture. The jury has what kind of a looking man he was before them." A later witness for the plaintiff, one Cubberly, having further identified the photograph, the plaintiff's counsel offered it in evidence and the judge inquired of the defendant's counsel if he had any objection. The defendant's counsel replied: "Yes, if the rule of damages is to be as your Honor indicated." The judge then stated: "Well, you may have your exception because I should have to admit it under my rule, I should think." The defendant's counsel then said, "I thought you would have to reject it under your ruling," and the judge ruled, "Well, I admit it."

Other facts are stated in the opinion.

The judge submitted to the jury special questions, which, with the answers returned by the jury, were as follows:

"1.   Did the defendant at the New York show prior to the talk between Kittredge and Randall on January 21, 1903, notify some

residents of New England that Randall was not or would no longer be the defendant's New England agent?" Answer: "Yes."

"2. Did the words and conduct of Kittredge at his interview with Randall at the New York Show on January 21, 1903, amount to an absolute repudiation of the defendant's obligations under the contract now sued upon?" Answer: "No."

"3. Was the demonstrating car furnished by the defendant to Randall in November, 1902, such a car as was then contemplated by the parties?" Answer: "No."

"4. Were the three cars referred to in the talk between Kittredge and Randall on or about November 17, 1902, and in Randall's letter of November 22, 1902, part of the 25 mentioned in the contract of June 7, 1902, or in addition thereto?" Answer: "Additional."

"5. Did Randall at his interview with Kittredge on January 21, 1903, consent to a rescission of the contract now sued upon?" Answer: "No."

"6. What sum, if any, does the jury find as damages on the plaintiff's claim entitled 'Second' in the second count of the declaration as amended for loss or profits on repair work and sales of parts during the year 1903?" Answer: "$1,500."

The jury found for the plaintiff in the sum of $14,889.20.

The subsequent proceedings at the trial and other exceptions by the defendant are described in the opinion.

*G. W. Anderson, (R. L. Ryder* with him,) for the defendant.

*W. G. Thompson, (R. Dow & G. E. Mears* with him,) for the plaintiff.

Rugg, C. J. This is an action at law pending in the Supreme Judicial Court for Suffolk County. The plaintiff's intestate, who for convenience will be referred to hereafter as the plaintiff or Randall, entered into a contract in writing with the defendant by which he agreed to become its New England agent for the term of one year from January 1, 1903, and to order twenty-five automobiles of it, furnishing specifications and advance partial payments on or before February 1, 1903, to be delivered between February 1 and July 1. The prices were specified by reference to the list of the defendant. The times of payment were fixed. He further agreed to maintain suitable sales rooms and repair

shop in Boston, to carry in stock for exhibition and demonstration one or more "new motor cars manufactured by" the defendant and reasonable supplies, to devote his "best energies" to the sale of the defendant's product, and to canvass his territory, and to receive promptly cars ordered, and to do local advertising. The order for twenty-five automobiles was given contemporaneously with the making of the contract.

The defendant agreed to make Randall its "exclusive agent" for New England for the term of one year from January 1, 1903, to furnish him its advertising matter, and to give him certain discounts from list prices on supplies and cars. It was further agreed that if Randall failed to secure "sales of the product of [the defendant] commensurate with the sales of other cars within" New England the defendant might terminate the contract on thirty days' notice in writing to the plaintiff, and that the contract might be terminated by the defendant on thirty days' written notice to the plaintiff.

Three bills of exceptions are here, and a fourth bill of exceptions disallowed by the Superior Court judge, is before us on report of a commissioner.

1.   The case was referred to an auditor. Upon the coming in of his report each party filed a motion to recommit the report. The first bill of exceptions relates to these proceedings. The plaintiff's motion was granted, and the defendant's denied, but the case was recommitted to the auditor with directions to the auditor to consider four defined matters and "any other matters which he thinks ought to be further considered." This was a compliance in substance with the chief thing which each party requested, viz., a recommittal of the report. It is doubtful whether the main part of the order, to which the defendant excepted, was anything more than a memorandum (as it is described in the record) and hence not a subject for exception in an action at law. *Attorney General* v. *Oliver,* 175 Mass. 163. *Abbott* v. *Walker,* 204 Mass. 71. *Regal* v. *Lyon, ante,* 230. Moreover, the statements contained in it do not appear to be rulings, but indications of the reasons which moved the single justice in the exercise of his discretion, to which no exception would lie. But treating it as subject to exception, no error is shown. A motion to recommit an auditor's report ordinarily is addressed to the discretion of the court, the exercise of which is not reviewable.

The discussion in the report of the ability of the plaintiff to perform his part of the contract on February 1 was wrong in view of the auditor's refusals, which appeared upon the face of the affidavit accompanying the plaintiff's motion, to admit evidence touching his financial standing. This appeared to be in the nature of a finding after refusal to hear evidence. If, as the auditor found, "on January 21 the Peerless Company without right terminated Randall's agency," it followed that Randall's finances were of no consequence on the issue of breach of contract. The entire subject of damages was left open by the express statement of the single justice that the time had not yet come for the court to lay down the rule of damages. The auditor was at liberty to adopt such rule of damages in view of all the evidence as seemed to him wise upon further consideration. This involved the question whether Randall would have been able to carry out his part of the contract when the time arrived for him to act, if he thought it material. The record is not fairly susceptible of the meaning that the single justice then laid down as the law of the case that the plaintiff was entitled to recover as full damages as if he had been permitted to complete the contract, no matter whether he would have been able to perform but for the breach by the defendant. That would have been laying down, in part at least, the rule of damages. But the single justice unmistakably said that the time had not come for that, and the case was sent back to the auditor with the fullest authority to reconsider the whole of it in all aspects. The law is plainly as was pointed out in *Beach & Clarridge Co.* v. *American Steam Gauge & Valve Manuf. Co.* 208 Mass. 121, 129, 132, that the plaintiff could recover full damages only when the evidence showed his ability to perform his part of the contract. No anticipatory breach of the contract appears to be involved in this bill of exceptions. If the defendant refused on any date to permit Randall longer to act as its agent in soliciting orders, that was a present breach. Plainly the rulings to the effect that the time had not arrived for the court to lay down a rule of damages and that the auditor was not required to make findings of subsidiary facts or a detailed statement of all the contentions of parties were not incorrect as matter of law.

2. No question of law is presented upon the defendant's motion to recommit the substitute report, which is the subject of the second

bill of exceptions.  It was addressed wholly to the discretion of
the single justice.  If any errors were referred to in the motion to
recommit, they were of such nature that they could have been
corrected at the trial.  *Tobin* v. *Kells,* 207 Mass. 304.  *Greene* v.
*Corey,* 210 Mass. 536, 546.  *Hunneman* v. *Phelps,* 199 Mass. 15.
*Chelmsford Foundry Co.* v. *Shepard,* 206 Mass. 102.

3.  The case was sent to the Superior Court for trial by a jury.
The third or main bill of exceptions relates to this trial.  Exceptions
touching performance by the plaintiff of his part of the contract
will be considered first.  A general ruling in favor of the defendant
or for the plaintiff for only nominal damages could not have been
given.  The auditor's report, admitted in evidence without objec-
tion, was a finding for the plaintiff for substantial damages.  The
plaintiff had a right to go to the jury upon the *prima facie* case
which it presented.  The auditor's report was an unequivocal
finding of facts upon evidence, and in no sense a ruling of law
upon facts stated.  It was entitled to the probative force aris-
ing from its inherent value, whatever that may have been, in
connection with all the other evidence.  *Fisher* v. *Doe,* 204 Mass.
34, 39, 40.

4.  The defendant contends that Randall failed to perform
his contract, in that he did not give specifications and deposits
for three cars before January 1, 1903.  This contention arises not
out of the original written contract, but out of a subsequent trans-
action.  The plaintiff ordered and received a demonstrating car
on terms of payment different from those stipulated in the original
agreement, with the understanding that he should order three
cars before January 1.  A special question was submitted to the
jury, by which they found that these cars were in addition to the
twenty-five ordered as a part of the main contract.  It was found
in answer to a further question that the demonstrating car fur-
nished by the defendant was not such as was contemplated by the
parties.  These special findings make it plain that the arrangement
respecting the three cars was collateral and subsidiary, failure to
perform which would not go to the essence of the main contract
or justify the defendant in repudiating it.  It is unnecessary to
consider the correctness of the charge upon the theory that they
were a part of the twenty-five cars ordered earlier.

5.  The contract required the plaintiff " to devote his best

energies to the sale of the product" of the defendant. The meaning of these words must be determined in the light of the other terms of the contract, of the circumstances of the parties when the contract was made, and of their conduct during the period when indisputably the contract remained in force. It is obvious that "best energies " is not used in the sense of exclusive attention. The word "exclusive" occurs in the contract in describing the kind of agent Randall became under the contract. The employment of a non-synonymous word here tends to show a different purpose. Another clause of the contract required him to maintain an efficient repair shop for cars of the defendant's make, not alone for those sold by him, but for all cars, and this business was to be conducted as a venture wholly at his risk. This in itself might require a part of his energy for its success. Moreover, it was known to both parties that Randall was carrying on the business of selling and repairing bicycles and motor cycles before the execution of this contract, for which he maintained a store and repair shop. It is not contended that this business was not to be continued. It is plain, too, that the parties did not intend that sales should be made only through Randall personally, because there was correspondence as to his representatives in other cities of New England, through whom he might conduct in part the business contemplated by the contract. It might have been inferred that the fact that Randall had and proposed to continue an established business of this general character, which it was anticipated he might enlarge, was one of the motives of the defendant in entering into the contract, and that the value of the arrangement depended in part upon the extent of Randall's acquaintance with the public interested in machines of this sort, and the nature of his reputation as being able to supply vehicles adapted to the desires or needs of all or a large proportion of prospective purchasers. This might be enhanced appreciably by his representing a line of non-competing automobiles as nearly complete as the state of the trade then permitted. The plaintiff was left under the terms of his contract, so far as concerned the selling of cars, to conduct his business in his own way. The means and methods to be adopted were his, and not those of the defendant. He was not subject to the supervision and control of the defendant in any respect, so long as he complied with the terms of the contract. *Conners* v. *Hennessey,* 112 Mass.

96.  *Morgan* v. *Smith,* 159 Mass. 570, 574.  *Sullivan* v. *New Bedford Gas & Edison Light Co.* 190 Mass. 288.  *Eldred* v. *Mackie,* 178 Mass. 1.  Under these and other conditions, which might have been found on the evidence, it is apparent that "best energies" meant such effort as in the exercise of sound judgment would be likely to produce the most profitable results to the defendant in view of the nature of the business and the extent of territory over which it was to be conducted.  The relation might have been found to have been analogous to that frequently established between a general retail merchant and the maker of any single and special kind of merchandise.  As bearing upon the question whether the plaintiff did devote his best energies to the sale of the Peerless car evidence was introduced to the effect that a few days before the alleged repudiation of the contract by the defendant the plaintiff entered into an agreement to act as agent for the sale of the Stevens-Duryea car for 1903.  If this was not a car which would compete, in any fair sense in the minds of prospective purchasers, with the car manufactured by the defendant, then he was not precluded from undertaking its sale.  He had a right to enlarge his business in the same general line.  As to this point the instruction was given, "If the Stevens-Duryea car was not a competing car, whatever he [Randall] did in regard to it is of course immaterial.  Was it such a car in size, horse-power, capacity for carrying passengers, its costs and in such other details as the jury think enters fairly into the question?  Was it a car of such a sort that a prospective purchaser would have no other basis upon which to decide whether or not to buy except the efforts of the agent to sell?"  The last sentence standing alone is not an accurate statement of the law.  Competing cars are those so similar in cost, design, size, power, carrying capacity and other characteristics as fairly may leave ordinary and reasonable customers in such doubt in making a choice between them as to permit the skill of a salesman to become a determining factor.  There was hesitation in the mind of the judge of the Superior Court as to the right of the defendant to an exception upon this point, for when it was saved he remarked to the defendant's counsel, "I several times used that very language to you and you did not object to it; I understood that both counsel approved that language."  To this statement no objection was made.  So far as the printed record goes, while the evidence

is not conclusive, its weight seems to be that the cars of these two makes on the market in 1903 were not competitors in any reasonable sense. The language used in the charge touching the subject taken as a whole in the light of all these circumstances is such that if it stood alone we should hesitate to hold it so clearly not susceptible of the correct meaning as to have been likely to mislead the jury or to require a new trial.

6. But the further instruction was given that the mere making of the agreement by the plaintiff on January 17 to act as agent for the Stevens-Duryea car (if found to be a competing car) would not be such a violation of his contract as to warrant rescission by the defendant on January 21 unless he did something in the meantime to interfere with the devotion of his best energies to the interests of the defendant. To determine the correctness of this ruling involves some analysis of the contract. It was in one respect merely a contract for purchase and sale of automobiles. As has been pointed out in discussing the "best energies" clause, the plaintiff was not strictly an employee of the defendant, but an independent dealer. In other respects it created the relation of principal and agent. The words, "agent" and "agency," occur several times in the contract. In a broad sense these words were used accurately in view of what both parties contemplated. The plaintiff had no right to undertake any obligation inconsistent with his duty to the defendant vigorously and intelligently to push the sale of the defendant's product in New England. All sales of those products were to be made by the terms of the contract exclusively by the plaintiff in the territory described. There is no inconsistency in the establishment of this double relation of an agreement for sales and for agency. They may coexist and impose binding duties if this is the intention of the parties. That is what this contract did in express terms. In this regard the case is similar to *John Hetherington & Sons* v. *William Firth Co.* 210 Mass. 8, 22, 25. It is firmly established that the agent is bound to exercise at all times the utmost good faith toward his principal. This is not a "technical or arbitrary rule. It is a rule founded upon the highest and truest principles of morality." *Parker* v. *McKenna,* L. R. 10 Ch. 96, 118. Agents are not permitted to put themselves in a position antagonistic to the interests of those whom they represent. They cannot serve two masters. It is not a question

whether in fact the principal has suffered actual injury. The policy of the law is contravened by the creation of the temptation for wrongdoing by entering into the adverse relation, and it is not necessary to go to the extent of showing that the opportunity was embraced. The mere act of signing a contract of agency which created legal obligations inconsistent with those assumed under the pre-existing contract with the defendant was an act which by itself alone justified the termination of the contract by the defendant. *Little* v. *Phipps*, 208 Mass. 331,333. *Quinn* v. *Burton*, 195 Mass. 277. *Erskine, Oxenford & Co.* v. *Sachs*, [1901] 2 K. B. 504. *Cotton* v. *Rand*, 93 Texas, 7, 23. Nor was it necessary that the defendant should have known of the making of the antagonistic contract with the competing company when it is said to have terminated the contract involved in this action on January 21. Nevertheless, it may serve as a sound ground for termination of the contract, if it be found to have existed. The defendant no longer was bound to continue an agency agreement with one so unmindful of his duty in that regard as to enter into an adversary contract, even though he had not commenced its performance. *Boston Deep Sea Fishing & Ice Co.* v. *Ansell*, 39 Ch. D. 339, 357. The defendant excepted to this paragraph of the charge expressly. It was erroneous in law. As it is conceivable that the jury may have believed the evidence to the effect that the Stevens-Duryea car was a competitor of the Peerless in 1903, it cannot be said that this erroneous instruction was not prejudicial to the defendant. It may have been decisive in causing the jury to reach the general finding in favor of the plaintiff.

7. The plaintiff did not answer promptly certain letters written him by the defendant. They were the natural letters of inquiry as to prospects of business, and what the plaintiff was himself doing and urging activity. It requires no discussion to show that under the circumstances here disclosed such failure did not go to the substance of the contract or warrant recission by the defendant. It was one circumstance to be considered with all others in deciding the issue.

8. The defendant argues with great strenuousness that there was no evidence of a breach of contract by the defendant. But it was found by the auditor that on January 21, 1903, the defendant "without right terminated" the contract. This finding, if unre-

butted or unexplained, was evidence sufficient to maintain the burden of proof resting upon the plaintiff in this respect, and would warrant a finding that the defendant committed a breach of the contract without legal justification. *Carroll* v. *Boston Elevated Railway*, 200 Mass. 527, 536. But considered apart from this there was evidence for the consideration of the jury. The testimony as a whole, together with the conduct of the defendant in taking steps to establish a Boston agency in its own name would support an inference that 'the interview between Randall and Kittredge on January 21 amounted to a withdrawal by the defendant of the plaintiff's authority longer to act as its agent in Boston. If this was found, it was a present violation of the plaintiff's right to solicit orders, and did not require him to wait to see whether specifications for a particular car or cars sent by him would be rejected. Every passing day was a time for performance on his part. Although he was not compelled to send any description and order for a car until February 1, he had a right to do so at any time after January 1. Refusal to recognize the continued authority of Randall under the agency to solicit orders from the public was an instant breach. No question of anticipatory breach was involved, if this interpretation was given to the narration of what was said and done on or about January 21. As has been pointed out, the contract had a double aspect — one of sales of automobiles, and the other of agency. They were so bound together that each was essential, and breach of either was a breach of the whole contract.

9. The defendant contended that it was justified in terminating the contract, on the ground that the plaintiff had failed to secure sales of its product "commensurate with the sales of other cars within said territory," and excepted to the instructions upon this point. But the charge in this respect was ample and accurate. The test established impliedly by the contract and stated expressly in the charge was whether the plaintiff sold as many cars of the defendant's make to the general public in the time he worked under the contract as were sold by other competing dealers in the same time, comparing with the "Peerless 1903 car with its merits and demerits, the car or cars whose sales are relied on with their merits and demerits." If there had been only one competing car, comparison would be with the sales of that car; if several, with the

sales of each. There was evidence that more than one other make of car was a competitor with the Peerless during 1903.

10. Many requests for rulings were presented by the defendant as to rescission and repudiation and waiver of the thirty days notice in writing required by the contract for its termination by the defendant. Most of them related to fragmentary aspects of the evidence and to conflicting claims of the parties. It is not necessary to review them in detail. The charge laid down in brief general propositions of law upon the subject which were correct. While they might have been stated with greater amplification, it cannot be said that they were insufficient. Of course all the evidence was open to a very different construction from that put upon it by the jury. But it could not have been ruled without error in law that it was not susceptible of the inferences drawn by the jury.

11. There was evidence tending to show that persons in the employ of the defendant solicited residents of New England to buy cars directly of it, and not through Randall, at the New York automobile show in January, 1903, and stated that he was no longer the defendant's New England agent. This evidence was admitted rightly. One of these persons was identified as Morrison, a sales agent of the defendant, and later in charge of the Boston agency of the defendant. Others were said to be about the Peerless booth at the show waiting on customers. This was a sufficiently close identification to render the evidence competent. *Norris* v. *Anthony,* 193 Mass. 225. *Bagley* v. *Wonderland Co.* 205 Mass. 238, 245. Statements of this sort perhaps to those who visited the booth through an invitation from Randall might have been found to have been made in the course of the defendant's business, apparently in the performance of the employee's duty to the defendant and within the scope of its authority. For conduct and statements of such agents the defendant might have been found responsible. *Bigelow Carpet Co.* v. *Wiggin,* 209 Mass. 542, 549. These were not necessarily idle rumors or prophesies. They might have been found to be inducements held out at the defendant's place of business by those in charge of it to procure sales for the benefit of the defendant in violation of its agreement with the plaintiff. If found to be authorized, they were a breach of such an essential part of the contract as would excuse performance by the plaintiff. The plaintiff was entitled to the agency in New England, exclusive

not only of other agents but of the defendant. *Garfield* v. *Peerless Motor Car Co.* 189 Mass. 395, 403. It would have been a violation of a vital part of the contract for the defendant to represent to New England customers that the plaintiff was not its agent, and that purchases could be made directly from it. The evidence was admitted rightly. There was, however, further evidence to the effect that there was a custom for other agents to sell at the show in New England territory crediting such sales on the account of the agent for that territory. If this custom was found to exist and to have been assented to by the plaintiff, it perhaps might have been treated as a subsequent modification of the contract. But treating the custom as admissible under *Garfield* v. *Peerless Motor Car Co.* 189 Mass. 395, 402, it was sufficiently favorable to the defendant to leave the weight of this evidence to the jury, and to charge that in the absence of custom, such sales and other conduct, if by authorized agents of the defendant, would constitute a violation of the defendant's obligation.

12. No objection was urged at the trial against the evidence as to breach of the contract by the defendant in attempting to make sales and in making representations in derogation of the plaintiff's agency or the charge touching it on the ground that the subject was not open under the pleadings. It is too late to raise that question now. *Ridenour* v. *H. C. Dexter Chair Co.* 209 Mass. 70.

13. The supplemental requests for rulings presented by the defendant at the conclusion of the arguments were refused rightly under Superior Court common law rule 45, no special leave having been granted to file them at a time later than required by the rule. *Quimby* v. *Jay*, 196 Mass. 584.

14. The trial judge ruled correctly that the reference in the auditor's report to the claims of profits of the plaintiff and to the claim of expenses incurred by the defendant in conducting its business for 1903 were mere statements of conflicting contentions and not findings. They were not inappropriately included as showing the limits of a wide variation in evidence, and as indicating that his finding was not the result of complete credence of that of either side.

15. The defendant earnestly argues that the plaintiff was not entitled to recover anything more than nominal damages. The

rule touching the loss of prospective profits as an element of damages for breach of contract frequently has been stated in recent cases. Such loss may be recovered when it appears to have been within the contemplation of the parties as a probable result of breach of the contract, to be its natural, primary and probable consequence, and to be susceptible of proof by evidence reasonably certain, and not resting chiefly on speculation, conjecture or surmise. It is not necessary that damages in order to be recoverable shall be calculable with mathematical accuracy. There may be elements which can be determined only by approximation, and which may be in some degree contingent or matter of opinion; and yet the damages as a whole may be measured by a standard as definite as that by which in the nature of things courts and juries must be guided in reaching results in many instances. *Gagnon v. Sperry & Hutchinson Co.* 206 Mass. 547. *Hanson & Parker v. Wittenberg,* 205 Mass. 368. *John Hetherington & Sons v. William Firth Co.* 210 Mass. 8, 21. *Maynard v. Royal Worcester Corset Co.* 200 Mass. 1, 8. *Dennis v. Maxfield,* 10 Allen, 138. Loss of profit may have been found to have been within the contemplation of the parties as the result of a breach. The margin of gross profit was fixed definitely by the contract at a percentage on the list price of the defendant. The contract required a minimum order of cars of a stated price from the plaintiff. In those respects, the contract differs widely from that under consideration in *John Hetherington & Sons v. William Firth Co.* 210 Mass. 8; *S. C. ante,* 257.

While the obligation of the defendant to deliver was not equally specific, it must be assumed to have been made in the prosecution of a fair business by the defendant, and not as a snare or trick. Hence, the intention of the parties might have been inferred to be that deliveries should be made at such times and in such numbers as would enable the establishment of a reputation of reasonable promptness on the part of the defendant. Such an inference was in favor of the good faith and business capacity of the defendant. Loss of profit may have been inferred to be likely to flow as a reasonable and probable consequence of the failure to perform by the defendant. Deprivation of a specific sum of money for the sale of each car would cause naturally a net financial detriment to the plaintiff. The evidence was such as not to leave the jury wholly without guide as to the extent of the plaintiff's

loss. The business of selling automobiles, although new, was not absolutely uncertain. The plaintiff had sold four Peerless cars during 1902 and other motor vehicles from his store on Columbus Avenue. There was sufficient stability and public interest in the subject to warrant the holding of one exhibition in New York before the making of the contract, and another in January, 1903. There was a considerable body of evidence as to manufacturers of other cars maintaining agencies or sales-rooms in Boston, and as to the number of cars sold by one or more of them. There was evidence also that Randall was intimately acquainted with this branch of trade, was himself an expert mechanic, and had a large number of subagents working or ready to work in soliciting orders for him in various parts of his territory. The Peerless car had acquired already reputation as a representative car. The number of cars actually sold by the defendant during 1903 and those of other makes sold by the plaintiff and others had some tendency to show the extent of the demand for mechanically driven vehicles. This and other evidence might have been found to furnish knowledge extensive enough to be a basis for a direct inference as to the number of cars the plaintiff might have sold but for the wrongful act of the defendant. The evidence as to the expenses of conducting the plaintiff's business was sufficiently definite to enable a just estimate to be made of the deductions necessary in order to ascertain the net profit which might have come to the plaintiff. Upon all the circumstances it cannot be said rightly that the damages were not capable of ascertainment by reference to a sufficient number of reliable facts covering a reasonable field of information. Proof of the nature and extent of the plaintiff's loss, which might have been treated as trustworthy, was afforded by the evidence. *Johnston* v. *Faxon*, 172 Mass. 466. *Loughery* v. *Huxford*, 206 Mass. 324. *Magnolia Metal Co.* v. *Gale*, 189 Mass. 124. *Edgar* v. *Breck & Sons Corp.* 172 Mass. 581. *Emmons* v. *Alvord*, 177 Mass. 466, 471. *C. W. Hunt Co.* v. *Boston Elevated Railway*, 199 Mass. 220. *Weston* v. *Boston & Maine Railroad*, 190 Mass. 298. *Halloran* v. *New York, New Haven, & Hartford Railroad*, 211 Mass. 132. *Chaplin* v. *Hicks*, [1911] 2 K. B. 786. *Blair* v. *Laflin*, 127 Mass. 518. *Speirs* v. *Union Drop Forge Co.* 180 Mass. 87. There is no inconsistency between the principle established by these cases and the equally well settled rule that injury or damage to real estate does not

permit an inquiry into business conducted on the real estate. *Bailey* v. *Boston & Providence Railroad,* 182 Mass. 537. The two subjects are distinct and separable. The contention of the defendant cannot be sustained to the effect that there should have been deducted from the plaintiff's net loss the profits made by him in the sale of the Stevens-Duryea car. If his agency for that car was not a breach of his contract with the defendant, then he had a right to sell Stevens-Duryea cars as a part of his general business, of which the defendant could not complain, so long as otherwise the contract was performed. As has been pointed out, the contract did not entitle the defendant to the entire time or exclusive attention of the plaintiff.

16. The defendant has argued that the plaintiff was not entitled to recover substantial damages without showing that he would have been able to carry out his contract on February 1st by depositing with the defendant the money which would then have been due from him. If he was in such financial condition that it would have been impossible for him to perform his obligation under the contract and this would have been manifest eleven days after the breach by the defendant, his damages would have been at most nominal or small. *Beach & Clarridge Co.* v. *American Steam Gauge & Valve Manuf. Co.* 208 Mass. 121, 133. This was the substance of the defendant's request for ruling No. 53.\* It was not given in form or substance. But it does not follow of necessity that this exception must be sustained. The defendant presented sixty-four different numbered requests for instructions. Counting those arranged as subsidiary and alternative rulings, there were one hundred and one. At the close of the charge, instead of pointing out those which it claimed had not been given, a course demanded by the plaintiff, *Kenny* v. *Ipswich,* 178 Mass. 368, it saved general exceptions to the refusal of the trial judge to grant such as had not been covered in substance by the charge and to the charge upon damages. This course was irregular, and did not give the court or the opposing counsel quite a fair chance in view of the great number and voluminousness of the requests. *Jones* v. *Newton Street Railway,* 186

---

\* The exact wording of this request was as follows:

" 53: The burden is upon the plaintiff in order to recover damages to show that Randall was able, and willing to furnish specifications and deposits for the twenty-five cars on or before February 1, 1903."

Mass. 113. *Commonwealth* v. *Devlin,* 141 Mass. 423. *McKee* v. *Tourtellotte,* 167 Mass. 69. *Fairman* v. *Boston & Albany Railroad,* 169 Mass. 170, 174. *Hayes* v. *Moulton,* 194 Mass. 157, 165. However as the judge made no objection to the extraordinary number of the requests and acting within his authority relieved the defendant of pointing out those thought to have been refused, it may be that we ought not to overrule on this ground alone the exception to the refusal to give this request. But when it is taken in conjunction with the course of the trial, justice does not seem to require a new trial. This branch of the plaintiff's case was definitely in the minds of the parties when the motions to recommit the first report of the auditor were argued. This has been pointed out under paragraph numbered 1 of this opinion. Thereafter it appears to have dropped out of the case as a distinct subject for controverted testimony. No evidence directly touching the financial responsibility of the plaintiff is found in the record, except in connection with the three extra cars not now material. Of course, as a part of the strategy of trial the defendant was not bound to do anything more than bide its time and ask for a ruling that there was no evidence touching a point where the burden rested upon the plaintiff. But having pursued that course and offered no evidence, it cannot complain if the record is construed with some strictness and with reference to all the inferences that might have been drawn under all the circumstances. There was evidence to the effect that the plaintiff had been in business several years and was maintaining two stores, that he had a good reputation in the trade and a wide acquaintance, and that he had said that he wanted to get money from collections of outstanding accounts rather than to borrow to meet his February 1 payment to the defendant. All this might be taken to mean that he was able to borrow or otherwise procure money to meet this obligation, and would do so when the time came rather than break his contract. The record is not without substantial evidence to support a finding in favor of the prevailing party upon the point. Under all these conditions, and especially in view of the multifarious requests for rulings presented by the defendant and the course of the trial, it seems more consonant with the general accomplishment of the ends of justice to require the excepting party to call attention specifically to a request like this at the close of a charge rather than to permit a

long trial to go for naught by reason of omission to cover a subject touching the reality of which, as a point of controversy at the trial, we are left in doubt upon the record. The defendant fails to satisfy us that the error was a material one under all the circumstances.

17.  For the reasons already stated no reversible error is shown in the treatment of the claim of the plaintiff for loss of profits on repairs and discounts on sales of parts set out in his second count.

18.  Testimony of a statement made by Randall, not in the presence of the defendant or any of its agents, when he was at the New York show, to the effect that he had been discharged by the defendant, probably was incompetent. *Brown* v. *Brown,* 208 Mass. 290, and cases cited. But no exception was taken until after the question was answered and no motion was made to strike out the evidence. Under these circumstances, the exception must be overruled. *Boyle* v. *Columbian Fire Proofing Co.* 182 Mass. 93, 99.

19.  No error appears in the exclusion of testimony proffered by the defendant from several witnesses as to the number of cars which in their opinion the plaintiff would have sold in 1903. Under some circumstances perhaps evidence of this sort might be admissible. But here there was evidence as to the number of cars of several makes actually sold during 1903 and divers other facts from which an inference could be fairly drawn by the jury. It was a case where expert evidence might well be excluded in the discretion of the trial judge. It does not appear that there was the inconsistency by the judge of admitting the testimony of one and excluding that of another witness to the same point. The evidence of Randall did not go to this point. *Whipple* v. *Rich,* 180 Mass. 477. The accuracy of the reason given for the exclusion of the evidence is of no consequence. It is enough if for any reason the exclusion was not erroneous.

20.  The evidence of the witness Brenton of declarations made to him by Randall was admissible as showing the condition of the demonstrator car and the efforts Randall had made to sell cars, under R. L. c. 175, § 66. Declarations are not rendered inadmissible under this statute, because the deceased has survived the beginning of the action and testified at one trial. Here Randall had testified before an auditor, and his evidence taken stenographically was read as evidence at the trial in the Superior Court. The statute makes no such distinction, but provides in unrestricted

words that declarations of a deceased person made before action brought shall not be inadmissible because hearsay. The statute has always been liberally construed. *White* v. *Boston Elevated Railway,* 208 Mass. 193. *Marston* v. *Reynolds,* 211 Mass. 590. It must be assumed that the preliminary finding of good faith and personal knowledge was made. The declarations were such that Randall, if called as a witness, might have testified to their substance. It does not appear that the declarations thus shown were touching precisely the same point as that covered by his testimony before the auditor read at this trial. It is not necessary to decide what would be the effect of that fact. There was no request that this evidence be restricted in its effect, and hence if admissible for any purpose the exception must be overruled.

21. The discretion of the trial judge would have been exercised more wisely by the exclusion of the photograph of Randall under the circumstances here disclosed. But it is not such an error as warrants a new trial. Such a decision will not be revised unless plainly wrong. *Field* v. *Gowdy,* 199 Mass. 568, 574.

22. Evidence from various witnesses as to the condition of the demonstrator car and the trouble Randall had in making it run was competent upon the issue whether the demonstrator car conformed to the supplemental contract for the purchase of these additional cars. Being competent upon this issue, a general exception to its admission must be overruled. *Produce Exchange Trust. Co.* v. *Bieberbach,* 176 Mass. 577, 581.

23. No reversible error appears in connection with the reading of a stenographic transcript of the testimony given by Randall at an earlier trial. This was admissible under the common law practice permitting an accurate reproduction of the testimony of a deceased witness given at a former trial between the same parties or their privies. *McGivern* v. *Steele,* 197 Mass. 164. *Jaquith* v. *Morrill,* 204 Mass. 181, 189. The transcript appears to have been very long and to have included many questions and answers thought by one or the other counsel not to be strictly material. It was suggested by the judge that each counsel select such portions as he desired to read to the jury. Both not acceding to this, he permitted the plaintiff's counsel to read what he desired and then the counsel for the defendant read all he cared to read without waiving his special objections or objection to permitting the plaintiff to read

only a part of it. While such evidence must be presented with substantial accuracy, it was quite proper for the trial judge to endeavor to shorten the reading of a mass of questions and answers which apparently did not seem to him to be helpful to the jury. The rights of the defendant were preserved by permitting him to read such parts as he desired, the whole being presented for his use. In essence, it was exercising simply judicial power as to the order of proof.

24. A very large number of exceptions were taken to the admissions and exclusion of evidence. Most of those argued by the defendant have been discussed in this opinion. It is stated in the defendant's brief that none are waived. They have all been examined with care. The others do not involve such questions of law as to require notice one by one. No reversible error appears to have been committed either because the rulings were made in the exercise of judicial discretion or because an incorrect ruling was withdrawn or corrected subsequently, or because relating to immaterial matters, or because cured by the answers of the jury, or for some other reason not requiring a sustaining of exceptions.

25. The second question submitted to the jury was in substance whether the defendant repudiated the contract at New York on January 21, 1903, to which the answer was "No." The plaintiff filed a motion to set aside this answer on the ground, among others, "that said answer is not the answer the jury intended to give to said question, but was based upon mistake, the nature of which will be disclosed by affidavits to be filed herewith." The several affidavits of eleven jurors were presented, which after setting forth his intention to have answered the question that the defendant through its manager on the date referred to declared an intention not thereafter to be bound by the contract concluded with the words, "the writing of the word 'No' in answer to the question was a mistake, and does not express the intention or opinion of the jury." The affidavit of the foreman was the same, except that he added the words, "I put to the jury this question, viz.: 'Gentlemen, is it your mind that this question should be answered favorable to the plaintiff,' and they all said 'Yes.'" This supplemental statement of the foreman was not competent under the rule of *Woodward* v. *Leavitt*, 107 Mass. 453, 460; *Commonwealth* v. *Meserve*, 156 Mass. 61; *Simmons* v. *Fish*, 210 Mass. 563, 571, and many other cases

to the effect that the proceedings within the jury room cannot be made the subject of inquiry. But no special objection was made to this part of his affidavit. It is separable from the part of his affidavit which was admissible. The competent and the incompetent are not so interwoven that they must stand or fall together, and at this stage of the proceedings under these circumstances justice does not require a new trial because of an error which, if specially pointed out at the time, might have been corrected easily. The general rule is that the policy of the law guards so strictly the secrecy of the deliberations of the jury that their conduct, motives or grounds of action in the jury room are sealed from subsequent investigation by examination of the jurors. But this falls short of excluding testimony or affidavits of all the members of the panel to the effect that a mistake has been made in the formal expression of the determination actually reached. Instant correction of manifest errors, either under the eye of the court or by sending out the jury for that purpose, is not infrequent. *Burke* v. *Hodge,* 211 Mass. 156, and cases cited at 163. The fair import of the affidavits presented is, not that the jury misunderstood the court's instructions or failed to apprehend the meaning of "repudiation" as applied to this contract, but that by reason of a clerical error there was a failure to express with accuracy in writing the conclusion to which all deliberately had given adherence. This is within the rule of practice established by *Capen* v. *Stoughton,* 16 Gray, 364, and consistently followed since. *Karrick* v. *Wetmore,* 210 Mass. 578, 579. The affidavits of all the jurors agreeing to the same point were admissible for the purpose of showing the clerical error occurring after the deliberations of the jury had ceased and the verdict had been agreed upon, and of enabling the court to correct it. A clerical error in the statement of the conclusions of a jury established by uncontroverted evidence may be corrected. It is true that the present case goes slightly beyond the facts in *Capen* v. *Stoughton,* 16 Gray, 364, but not beyond its principle. The verdict there in question was that of a sheriff's jury returned into court after the jurors had separated, while in the case at bar the answer was read in open court and affirmed and recorded in the presence of the jurors. But an inconsistency or mistake was obvious upon the face of the several answers and the general verdict. They could not all stand together. This appar-

ently escaped the attention of the trial judge and of all counsel, for nothing seems to have been said about it at the time. Under such circumstances it is more consonant with justice to receive the unanimous statement of all the jurors, even though made subsequent to their separation, for the purpose of correcting a clerical error in what is otherwise a correct record of a fair trial, than to put the parties and public to the expense of another trial. This course has been followed generally whenever the question has arisen. *Dalrymple* v. *Williams*, 63 N. Y. 361. *Hodgkins* v. *Mead*, 119 N. Y. 166. *Gillespie* v. *Ashford*, 125 Iowa, 729. *Peters* v. *Fogarty*, 26 Vroom, 386. *Hamburg-Bremen Fire Ins. Co.* v. *Pelzer Manuf. Co.* 22 C. C. A. 283; 76 Fed. Rep. 479. *Roberts* v. *Hughes*, 7 M. & W. 399. *Cogan* v. *Ebden*, 1 Burr. 383. *Wolfgram* v. *Schoepke*, 123 Wis. 19. *Jamieson* v. *Harker*, 18 U. C. Q. B. 590. See 4 Wigmore on Evidence, § 2355. There are decisions to the contrary, but they contain no full discussion of the subject. *McKinley* v. *First National Bank*, 118 Ind. 375. *Chevallier* v. *Dyas*, 28 La. Ann. 359. *Smalley* v. *Morris*, 157 Penn. St. 349. *Stevens* v. *Montgomery*, 27 Minn. 108. These cases seem to us to fail to take account of the distinction between the correction of a mistake proved by the unanimous statement of the panel, on one side, and the impeachment of a verdict by testimony respecting conduct and discussion in the jury room or the understanding and apprehension of evidence or law by the several jurors, on the other. The former is permissible. The latter is not. *Hannum* v. *Belchertown*, 19 Pick. 311. *Bridgewater* v. *Plymouth*, 97 Mass. 382. *Woodward* v. *Leavitt*, 107 Mass. 453.

26.   A further question is raised as to the action of the judge of the Superior Court upon the motion to set aside the answer to this question. In the main bill of exceptions it appears that when the motion was heard the judge said respecting the affidavits of the jurors "I shall rule that they are admissible, and if admissible, the finding is set aside. . . . The general verdict stands." To both these rulings the defendant duly excepted. A few days later the judge indorsed upon the motion (which set forth several grounds, the fourth being the mistake in the record of the answer) "Motion allowed on the fourth ground if affidavits are legally admissible. Otherwise motion disallowed." Thereafter the judge changed the indorsement by striking out the words "if affidavits are legally

admissible. Otherwise motion disallowed" as stated in the main bill of exceptions, "so as to make the statement of rulings and findings of the court in accordance with the facts as above indicated." It is apparent from this recital that the substance of the original ruling was that the affidavits were admissible, and that relying upon them the answer was set aside. The indorsement made upon the motion was no ruling at all, failing to express the unequivocal oral ruling earlier made. It was inoperative as an adjudication of the motion. It was the duty of the judge to make a determination of the matter. That duty was performed at the argument by the oral ruling and by the change made in the indorsement which converted the previous ineffectual indorsement into a decision. The plain inference seems to be that the indorsement as first made was erroneous in not expressing the ruling actually made, and that later this was corrected. Of course it is of no consequence whence the suggestions first came that this was an error, whether from the consciousness of the judge or the argument of counsel. If it was an error, it should have been corrected as soon as discovered unless rights based upon it had accrued or unless for some other reason it was too late to right the wrong. But even if there was a change of mind, from a plain oral ruling upon evidence and a decision upon the motion, to a declination to make any ruling upon the evidence or disposition of the motion as shown by the first indorsement, and then back again to the original ruling and decision as shown by the final amendment of the indorsement, the defendant fails to show that it has suffered harm. All these matters occurred after the verdict and after the discharge of the jury and pending the allowance of the main bill of exceptions, and while a motion or motions interlocutory in their nature were depending undisposed of and before any judgment. If the first written indorsement upon the motion to set aside the answer had remained unchanged upon the record until it had reached this court, it would have been necessary to send the case back for a decision of the motion because it related to a vital step toward a final judgment which could not have been entered until the motion was decided. An utter failure to dispose of the motion, such as was manifested by the first indorsement upon it, was not and could not be made the equivalent of an overruling of the motion with the effect that the defendant could stand upon what-

ever rights might have been established, if that answer of the jury had remained as final. See *Boyd, petitioner,* 199 Mass. 262.

27. The exception of the defendant to the ruling of the court that the general verdict should stand, although the answer of the jury to the second question was set aside, must be overruled. After the answer was set aside, there was no inconsistency upon the record. The general verdict, if sound in other respects, could not have been affected by the correction of an error in the answer to a special question. The motion which was granted was not to correct the error in the record, but to set aside the answer because of the error. In this case the result was the same as if the question had never been put. *McManus* v. *Thing,* 202 Mass. 11; *S. C.* 208 Mass. 55. *Monies* v. *Lynn,* 119 Mass. 273.

28. The defendant filed a separate bill of exceptions (which is the fourth bill of exceptions here) touching, among other matters, the proceedings upon the motion to set aside the answer of the jury to the second question. In this respect the separate bill of exceptions was irregular. This subject was fully covered in the main bill without objection and could not properly be made the subject of any other bill of exceptions. The dates of the filing of these two bills are not certain from the record. It may be that a separate bill of exceptions respecting this matter was necessary originally. But when its subject matter had been included in the main bill of exceptions, the separate bill upon this point ceased to have any significance. It becomes unnecessary to consider whether there was any material difference between the two narrations, because so much of the separate bill as related to this matter should have been disallowed, for the reason that without objection it had been embodied in the main bill.

29. The defendant filed a motion that judgment be entered for it on the ground that the answer of the jury to the second question, to the effect that the defendant did not repudiate the contract, required that result. But when this answer was set aside, properly as has been pointed out, no foundation remained for the defendant's motion, and it was denied rightly. The proper way to bring to this court the correctness of this denial by the Superior Court was by appeal under R. L. c. 173, § 96, as amended by St. 1910, c. 555, § 4. It was a matter of law apparent upon the record. But it has been held that such ruling is also subject to exception

under R. L. c. 173, § 106, as amended by St. 1906, c. 342, § 3 (see St. 1911, c. 212). *McCallum* v. *Lambie*, 145 Mass. 234.

30. This matter, embodied in the fourth bill of exceptions, was distinct and separable from the exception to the modification of the phrase of the indorsement upon the motion, which remained in the same bill improperly after the main bill was allowed. The Superior Court should have allowed this exception, and disallowed the rest of the bill. *O'Connell, petitioner*, 174 Mass. 253, 257. A bill of exceptions of this kind containing subjects distinguishable without difficulty, one or more of which is stated correctly and others not, does not come within the rule of *Horan, petitioner*, 207 Mass. 256, which held that a commingling of exceptions with a mass of irrelevant matter tending to give color to the case should be disallowed as a whole. This portion of the fourth bill of exceptions is properly before us on the commissioner's report. But the exception is overruled.

31. At the argument of these exceptions before this court the plaintiff moved that portions of the brief of the defendant be stricken out. This motion is granted, so far as it relates to "The Lost Letters" on pages 80, 81, 82, and to the beginning of the first full paragraph on page 83. The presiding judge had stated, in accordance with a stipulation of counsel, that certain letters had "been lost, without fault on the part of any person whatsoever." Reference to the subject in brief or argument was irrelevant, and should be stricken out. The present motion is in such form that it can be granted and is to be distinguished from that denied in *Commonwealth* v. *Marshall*, 211 Mass. 86. The other matters urged in this motion we do not treat as suggestions of disrespect to the trial judge, which is the only ground for expunging them.

32. The result is that the only exceptions which must be sustained are those discussed under paragraphs 5 and 6 of this opinion. They relate to the inquiry whether the plaintiff broke his contract by undertaking an agency antagonistic to his contractual obligation to the defendant. In substance, that branch of the case resolves itself into the question, was the Stevens-Duryea automobile of 1903 a competitor of the Peerless of that year? This is a simple and separable issue. It is not necessary to re-try the whole case in order to settle it. All the other issues have been decided by a trial in which no error of law is shown. The general verdict

and answers to questions are to stand, except that to the second question, which has been set aside. The new trial is to be confined to the question above stated in substance. *Simmons* v. *Fish,* 210 Mass. 563. If it is answered in the affirmative judgment should be entered for the defendant. If it is answered in the negative judgment should be entered for the plaintiff on the verdict.

*Ordered accordingly.*