FRED LOUNSBURY *vs.* JOSEPH McCORMICK.

ROY E. HATHAWAY *vs.* SAME.

BAY STATE STREET RAILWAY COMPANY *vs.* SAME.

Bristol.    October 26, 1920. — January 15, 1921.

Present: RUGG, C. J., DE COURCY, CROSBY, CARROLL, & JENNEY, JJ.

*Negligence,* In use of highway, Motor vehicle, Street railway.    *Practice, Civil,* Requests, rulings and instructions, New trial, Exceptions.

At the trial of three actions against the owner of a motor truck for personal injuries and property damage, brought respectively by the conductor and the motorman of a street railway car, which at about ten o'clock in a night in December, 1916, ran into the defendant's truck from the rear, and by the street railway company, it appeared that, at the place of the accident, the street railway track was in a sparsely settled community on the southerly side of a highway but was separated from the travelled way by a fence, was on a grade lower than the travelled way, and was constructed with its rails and sleepers exposed. The defendant, proceeding from an intersection with another highway, travel being difficult because

of snow and ice, found great difficulty in propelling the truck by the travelled way and chose to go by the "cut" on the street railway track and became stalled on the track about one hundred feet from the intersecting way. There was evidence tending to show that the weather was foggy and that it was not possible, even with the aid of the bright headlight of the electric street car, to see more than a car's length ahead; that the motorman blew his whistle before reaching the intersecting way and made a slight application of the brakes; that the bonnet and the headlights of the street car were lighted; that, from the time that the defendant's truck became stalled on the track to the time of the collision, fifteen minutes elapsed, during which the operator sought to get the truck going; that, when he saw the bright headlight of the street car approaching from his rear, he kept on working and gave no warning to the approaching street car and that, in violation of St. 1915, c. 16, § 3, there was no rear light of warning on the truck; that the motorman did not see the truck until he was twenty feet from it, when he reversed his power and, at the time of the collision, was travelling at a rate of speed of not more than fifteen miles an hour and by the collision did not push the truck forward. There was conflicting evidence as to previous use of the "cut" by vehicles other than street cars, and it was undisputed that, just before and just after the accident, motor vehicles had travelled over the adjacent travelled way. *Held*, that

(1) There was evidence warranting a finding of negligence on the part of the defendant's operator in not giving warning of the presence of the truck on the track;

(2) It could not be ruled as a matter of law that negligence of either the motorman or the conductor of the street car contributed to cause the accident;

(3) It could not be ruled as a matter of law that the amount of travel through the "cut" could not affect the question of the negligence of the defendant's operator;

(4) It could not be ruled as a matter of law that "it was evidence of negligence or wilful wrong on the part of the street railway company, its agents or servants," for the street car to run into the motor truck from behind. Distinguishing *Vincent* v. *Norton & Taunton Street Railway*, 180 Mass. 104.

A judge is not required to grant, at a trial, requests which single out a part of the relevant but controverted facts and ask for a ruling as to their effect.

Requests for rulings at the hearing of a motion for a new trial, which are predicated on an assumption of stated facts, properly are denied when the judge does not find the facts to be as stated in the requests.

No error was found in the denial, in the actions above described, of motions for a new trial, supported by affidavits and based on alleged newly discovered evidence tending to show a mistrial.

THREE ACTIONS OF TORT, the first and second actions being for personal injuries and the third for property damage resulting when a street railway car of the plaintiff in the third action, with the plaintiff in the first action as conductor and the plaintiff in the second action as motorman, collided with a motor truck of the defendant standing upon the street railway track. Writs dated December 23, December 22 and December 22, 1916, respectively.

In the Superior Court, the actions were tried together before *Sisk*, J. Material evidence is described in the opinion.

At the close of the evidence, the defendant asked for the following rulings:

"1. That upon all the evidence the defendant was not guilty of negligence that caused the collision.

"2. That upon all the evidence the plaintiff in each case is not entitled to recover.

"3. That upon all the evidence the plaintiff in each case was not in the exercise of due care.

"4. That upon all the evidence the plaintiff in each case was guilty of contributory negligence."

"10. That if the electric car was operated at a speed so great that the motorman thereof could not stop the car within the distance in which he could see an object on the track ahead of his car, his vision being limited to twenty feet ahead by reason of the atmospheric conditions and he having admitted that he could not stop his car within sixty-four feet under the conditions as they existed at the time and place of the collision, then the plaintiffs cannot recover."

"12. The amount of travel through the cut cannot affect the question of the defendant's negligence."

"14. The defendant's servants had a right to assume that the operator of an electric car coming west along that section of the track, approaching, and at the place of collision would use such care toward him as would discover the presence of an automobile truck stalled in a position of danger on the track, and stop the car before collision."

"16. For a street car to run into an automobile truck from behind, without special circumstance to justify it, is evidence of negligence or wilful wrong on the part of the street railway company, its agents or servants.

"17. Upon the evidence the jury would be warranted in finding that the defendant's servants had reason to believe that the automobile truck could be seen by the motorman at a distance far enough away to prevent a collision if the motorman of the car was properly attending to the running of his car."

The rulings were refused. The jury on May 28, 1918, found for the plaintiff in the first action in the sum of $15,000; for the

plaintiff in the second action in the sum of $8,500, and for the plaintiff in the third action in the sum of $471.93; and the defendant alleged exceptions.

Amended motions for a new trial were overruled on November 20, 1918. On December 27, 1919, the defendant filed the additional motions for a new trial described in the opinion, accompanying them with twenty-one affidavits.

At the hearing of the motions, the defendant presented the following requests for rulings:

"1. On the evidence of perjury by a material witness on a material fact the defendant is entitled to a new trial as a matter of law.

"2. On the evidence that the minds of the jury were affected by facts not a part of the evidence and contrary to the evidence the defendant is entitled to a new trial as a matter of law.

"3. On the evidence that the injuries have proved to be much less than the jury concluded they were at the time of the trial the defendant is entitled to a new trial as a matter of law.

"4. Evidence of perjury on the part of a material witness as to material facts is a sufficient ground for granting a new trial as a matter of law.

"5. Evidence that the minds of the jury were influenced by facts not a part of and contrary to the evidence is a sufficient ground for granting a new trial as a matter of law.

"6. Evidence that the injuries have not proved as great as the evidence at the trial indicated is a sufficient ground for granting a new trial as a matter of law.

"7. Evidence that the minds of the jury were influenced by the fact of insurance company is a sufficient ground for granting a new trial as a matter of law.

"8. If the evidence raises a reasonable doubt as to the fairness of the trial the court in the interest of equity and justice should grant a new trial as a matter of law.

"9. The amount which the cut was used was very material on the question of due care and negligence, the attempted proof of little use by evidence perjured, mistaken and known to be misleading as shown by testimony of Nichols in view of affidavits of Carpenter and others is a sufficient ground for a new trial as a matter of law.

"10. Affidavits as to facts which, if true, tend to show that the defendant did not have a fair and equitable trial entitle the defendant to a new trial as a matter of law."

After hearing these motions, the judge filed the following memorandum, which is made a part of the bill of exceptions:

"The above actions were tried together. The trial commenced Tuesday, May 21, 1918. The plaintiffs rested the following Friday. The usual adjournment was taken until the following Monday. Verdicts were returned for the plaintiffs May 28, 1918. Defendant's motion for a new trial in each case was filed May 29, 1918, and the motion to amend 'motion for new trial' was filed July 9, following. Both motions were overruled November 20, 1918. Defendant's bill of exceptions was allowed December 15, 1919. On December 27, 1919, the defendant filed a motion for a new trial on the ground of newly discovered evidence. At the trial of the actions it was agreed that if the Bay State Street Railway Company obtained a verdict, its damages were fixed at $471.93. Hathaway was forty-one years of age; Lounsbury was twenty-five years of age.

"The medical experts called by the plaintiffs testified that both plaintiffs Lounsbury and Hathaway were seriously and permanently injured. No medical expert testimony was produced by the defendant to contradict that of the plaintiffs, though it appeared that both plaintiffs were examined by physicians in behalf of the defendant, but [that they] were not called as witnesses.

"The defendant's first motion for a new trial set up the usual grounds for such motions, and that the damages were excessive. This motion was argued months after the trial, the defendant mainly relying on the ground of excessive damages in the cases of Hathaway and Lounsbury. At my request a transcript of the medical evidence was furnished me, which I carefully examined in connection with the testimony of the plaintiffs. During the hearing on this motion, no suggestion was made by counsel for the defendant of any impropriety on the part of any juror, or that there was any material evidence in favor of the defendant other than that produced at the trial. I met counsel several times during the following months in relation to defendant's bill of exceptions, and finally allowed same December 15, 1919. No suggestion during this period was made by counsel for the de-

fendant of any impropriety on the part of any juror, or that there was any material evidence in favor of the defendant other than that produced at the trial. Shortly after the filing of the last motion, I met counsel and, in response to my question, counsel for the defendant stated that he knew of no improper influence on the jury exercised by the plaintiffs. During the trial many witnesses were called by both sides as to the use of ' a certain cut adjacent to the wrought part of the road.' In view of the number of days consumed in the trial of these actions, there was ample opportunity for the defendant, if he then deemed it necessary, to call additional witnesses on this point. The newly discovered evidence on this question is plainly cumulative. During the trial one George M. Ryan, a witness called by the plaintiffs, in answer to the question, 'Did you ever drive one of your teams through that cut?' replied, 'I never did, no sir.' In his affidavit annexed to the last motion for a new trial, he says 'I made a false statement (at the trial) as I have driven through the cut with Maurice Collins.' Collins, who had previously testified at the trial for the defendant, was recalled by the defendant after Ryan testified, and testified that he (Collins) remembered going through the 'cut' with him (Ryan). Ryan was apparently a disinterested witness. Collins was then in the employ of McCormick as foreman. For aught that appears, it may be that the jury believed Collins rather than Ryan.

"As to the affidavit of Juror Jesse Williams, concerning his illness during the trial: Sometime after the trial commenced, it appeared that Williams was suffering with asthma. In answer to my question in open court, he stated he would be able to go on, provided I would allow the jury to take a short recess from time to time as he might request to permit him to use a certain medicine. During the trial he made a few such requests, and a short recess was taken each time. The juror made no other complaint, and appeared to be fully competent to sit as a juror.

"As to the affidavit of this juror (Williams) and Jurors David W. Condon and Thomas Guay, annexed to the defendant's last motion, with respect to what transpired in the jury room. The jurors cannot now testify as to the motives that actuated them in arriving at their verdicts. The verdicts in themselves do not in any way help to determine what went on in the jury room.

They are entirely consistent. The testimony of the plaintiffs, Hathaway and Lounsbury and their medical experts, if believed, would fully warrant the verdicts with respect to the damages awarded.

"I have examined all the affidavits annexed to the defendant's motion in connection with the transcript of all the evidence in the several cases. I find no grounds to set aside the verdicts. The defendant's motion in each case is denied.

"The defendant filed ten requests for rulings, a copy of which is annexed.

"As to requests numbered one and four, they are based upon the assumption that there was evidence of perjury by a material witness on a material fact. I find that there was no such evidence. These requests are, therefore, refused. As to requests numbered two, five and seven, they are based upon the assumption that there was evidence that the minds of the jury were affected by facts not a part of the evidence and contrary to the evidence. I find that there was no competent evidence to that effect. These requests are, therefore, refused. As to requests numbered three and six, they are based upon the assumption that there was evidence establishing as a fact that the injuries the plaintiffs received were much less than the jury concluded they were at the time of the trial. I find that there was no such evidence. These requests are, therefore, refused. As to requests numbered eight and ten, they are based on the assumption that evidence was produced tending to prove that the defendant did not have a fair trial. I find that there was no such evidence. These requests are refused. Request nine is refused."

The motions were denied; and the defendant alleged exceptions.

*J. Wentworth,* (*H. S. Avery* with him,) for the defendant.

*H. F. Hathaway,* for the plaintiffs Hathaway and Lounsbury.

*S. P. Hall,* for the plaintiff Bay State Street Railway Company.

JENNEY, J. About ten o'clock on the night of December 21, 1916, there was a collision between an electric car of the plaintiff Bay State Street Railway Company, of which car the plaintiffs Fred Lounsbury and Roy E. Hathaway were respectively conductor and motorman, and a motor truck owned by Joseph McCormick, the defendant, and operated by his agent Viall, who was then conducting the defendant's business and acting

with his authority.  The accident happened on a public highway at a place which was one hundred feet westerly from an intersecting public street, called Arcade Avenue, and where the railway was operated through a sparsely settled district in or near the village of Seekonk.  The railway track, although wholly in the public street, was on its southerly side and separated from the travelled way by a guard fence.  The grade of the track was lower than that of the travelled way.  The construction was that commonly known as steam railroad construction, the rails and sleepers being exposed.  Shortly before the accident, there had been a fall of snow followed by rain and by freezing weather; and the spaces between the rails and sleepers were somewhat filled with snow and ice.  Travel upon the adjoining part of the highway was also more difficult than it otherwise would have been.

The evidence was conflicting in regard to the weather conditions on the night of the accident.  The individual plaintiffs and other witnesses testified that the weather was foggy and misty, and that it was not possible to see, even with the aid of the lighted headlight of the electric car, more than a short distance — from eighteen to twenty feet to that of a car's length.  Witnesses called in behalf of the defendant testified that there was little or no fog and that the headlight of the electric car could be seen for a distance of from one hundred to two hundred feet.

Viall, who was thoroughly familiar with the place and its conditions, had an assistant with him.  He testified that, because of the icy condition of the road and the presence of drifted snow, great difficulty had been experienced in driving the truck; that when he reached a point within a few feet of the easterly end of the fence dividing the track from the travelled way, the truck slipped and skidded on to the track and that he could not proceed along the part of the street wrought for travel, and therefore started along the track and went about two hundred feet into the cut, when the wheels again slipped and the truck stopped; that he and his assistant got out, applied a chain to the rear wheel to prevent its slipping, and then tried to go ahead but could not do so; that while so engaged they saw the bright headlight of the approaching street car, but kept on working and did nothing to give warning of the presence of the truck upon the track other than to show a red "barn lantern" which was on the rear of the

truck; and that as the car approached they left, getting over the fence. There was evidence, however, that there was in fact no light upon the rear of the truck. The length of time that elapsed after the truck entered into the cut and before the collision, was in controversy. Viall testified that after the truck entered upon the cut and before he saw the headlight on the approaching electric car it was "some five minutes." Another witness testified that the time was "ten or fifteen minutes." The evidence, while conflicting, was sufficient to justify a finding that the speed of the street car was not more than fifteen miles an hour, possibly twenty, and that the truck was not pushed forward by the impact of the street car. The evidence as to the previous use of the cut by vehicles other than electric cars was conflicting; and it was undisputed that just before and after the collision other automobiles travelled upon the part of the way wrought for travel and adjacent to the cut.

The motorman testified that he blew the whistle of his car for Arcade Avenue, and as he approached that street, made a slight application of his brakes; that both the bonnet and the headlights of the car were lighted; that he could see about twenty feet ahead; that he had no power on the car at the time of the accident; that, looking ahead, his left hand on the controller and his right hand on the air brake, he first saw the truck when it was about twenty feet away, and that then he put on the reverse.

The defendant requested the judge to rule that upon all the evidence the plaintiff in each case was not entitled to recover; that the plaintiff was not in the exercise of due care; that the defendant was not negligent. These requests were properly refused. The jury could have found that it was an act of negligence, at that time and under the circumstances disclosed, to drive upon the track, or having driven thereon, and then having stopped, to have given no notice of the presence of the car by placing warning lights or by giving other warning signals of the stalled condition of the truck. If there was no red light upon the rear of the truck there was a violation of the provisions of St. 1915, c. 16, § 3, which was evidence of negligence. *Hallett* v. *Crowell*, 232 Mass. 344. Although it was the duty of the defendant's servants to apply themselves diligently to the removal of the truck from the track, it was also their duty to exercise reason-

able care to give such warning as was necessary under the circumstances to those in charge of the approaching car. The jury well might have concluded that there existed a more immediate and imperative duty of warning, than of removal. The motorman and the conductor could have been found to be in the exercise of due care. Neither the speed of the car nor the failure of the motorman to see the truck or to stop the car was negligent as matter of law. *Daigneau* v. *Worcester Consolidated Street Railway,* 231 Mass. 166. The disclosed conduct of the conductor did not warrant a ruling that he failed to exercise reasonable care under all the circumstances.

The tenth, fourteenth and seventeenth requests singled out a part of the relevant but controverted facts and asked for a ruling as to their effect. This the judge was not bound to do. *Ayers* v. *Ratshesky,* 213 Mass. 589.

The twelfth could not properly be given. It asked the judge to rule that the amount of travel through the cut could not affect the question of the defendant's negligence; but such use might well be considered. If there was but little travel and the defendant's agent knew that fact, it could not be said that such a condition of things should not be considered as bearing upon his negligence, because if no object could reasonably be expected to be upon the tracks, the duty of warning might be found to be more imperative than otherwise. *Nelson* v. *Old Colony Street Railway,* 208 Mass. 159. This exception is considered and overruled, although upon the motion for a new trial, hereinafter referred to, the defendant requested a ruling in which he set forth that the amount of the use of the cut was very material on the question of due care and negligence.

By the sixteenth request, the judge was asked to instruct the jury that without special justifying circumstances, "it is evidence of negligence or wilful wrong on the part of the street railway company, its agents or servants," for a street car to run into an automobile truck from behind. The rights of the parties upon the highway were defined to the jury without criticism or exception and it was not error to refuse the request, which was based on *Vincent* v. *Norton & Taunton Street Railway,* 180 Mass. 104. Special circumstances here appeared. There was no evidence of "wilful wrong" and hence no instruction relating thereto

was required, if indeed it would have been proper. The judge was not bound to divide the request and to consider it piecemeal.

Verdicts were returned for the plaintiffs on May 28, 1918, Motions for new trials were filed on May 29, 1918, and amendatory motions therefor on July 9, 1918. These motions were overruled on November 20, 1918. On December 27, 1919, the defendant filed motions for a new trial on the ground of newly discovered evidence and of a mistrial of the case, specifying also that certain witnesses called by the plaintiffs had testified falsely or under a misapprehension or mistake; that the plaintiffs had testified falsely as to material facts; that the jurors were improperly influenced to return a verdict, and had before them information not in evidence which they in fact considered; that the plaintiffs since the trial had been able to do their regular work and had not suffered the permanent incapacity which the jury had anticipated.

During the hearings upon said motions, which were denied, the defendant made ten requests for rulings. Although the bill of exceptions does not so recite expressly, we assume that the motions were heard wholly upon the accompanying affidavits which, with the findings of fact of the trial judge, are made a part of the exceptions. The judge also recites that he carefully examined in connection with the motion a full transcript of the evidence in the cases. All of these requests were rightly refused. Those numbered one and four relate to perjury by a material witness and the effect thereof. The judge found that there was no evidence of such perjury.

Those numbered two, five and seven, based on the assumption that the jury were affected by facts not a part of the evidence and contrary thereto, were not supported by competent evidence. *Randall* v. *Peerless Motor Car Co.* 212 Mass. 352, 386.

There was no evidence that the jury were influenced by the "fact of insurance company" referred to in the seventh request. One of the jurors made affidavit that while in the jury room, during recesses while the trial was going on, he heard it mentioned on more than one occasion that an insurance company was interested. This was not enough to show influence upon the minds of the jury sufficient to oblige the judge to grant a new trial. The mere fact that insurance exists and is brought to the knowl-

edge or attention of the jury, while it may authorize a new trial, does not compel such action. It was not shown that the minds of the jury were affected by the interest of an insurance company in the result of the litigation. See *Anderson* v. *Duckworth,* 162 Mass. 251; *Perkins* v. *Rice,* 187 Mass. 28; *Sibley* v. *Nason,* 196 Mass. 125; *Stevens* v. *Stewart-Warner Speedometer Corp.* 223 Mass. 44; *Kennedy* v. *Armstrong,* 223 Mass. 354; *Dempsey* v. *Goldstein Brothers Amusement Co.* 231 Mass. 461.

There was no error in the refusal of the fifth and sixth requests as to the amount of damages. The proffered evidence was largely cumulative. It could not be determined as matter of law, as the defendant requests, that the "injuries have proved to be much less than the jury concluded they were at the time of the trial;" and even if "the injuries have not proved as great as the evidence at the trial indicated," the seventh request was properly refused because of the finding of the judge that the evidence, if believed, fully warranted the verdicts rendered with respect to damages. *Davis* v. *Custer,* 230 Mass. 603.

The exceptions to the denial of the eighth and tenth requests are based on the assumption that the defendant did not have a fair trial. They must be overruled because as found by the judge there was no evidence by which they were supported.

The ninth request relates to the materiality of the use of the cut in which the track was located. It assumed that the evidence showing it had been but little used was "perjured, mistaken and known to be misleading," and further assumed the truth and probative effect of evidence contained in the affidavits accompanying the motions. It was refused rightly.

We have examined with care the basic questions involved in the disposition of the motions for new trial and find no error.

*Exceptions overruled.*